Lyon v. Batz.

LEE H. LYON, Respondent, v. JOHN BATZ *et al.*, Appellants.

**St. Louis Court of Appeals, December 9, 1890.**

1. **Evidence:** ADMISSIBILITY OF ENTIRE CONVERSATION. Where part of a conversation is offered in evidence, as an admission of a party to the suit, such party may show, either by his own testimony or that of third persons, everything that was said by him in the same conversation on the subject to which the admission relates, as well as everything which may tend to qualify or explain the particular statement testified to.

2. **Practice, Trial:** TENDER OF PROOF. Error is not well assigned of a ruling rejecting a tender of proof, which is too broad.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*Frank E. Richey*, for appellants.

When the declarations of parties to a suit are given in evidence against them, the whole conversation that took place at the time the declarations were made is admissible in their own behalf. *Howard v. Newson*, 5 Mo. 523; *Milling v. Toll*, 9 Johns. 140; *Reevs v. Hardy*, 7 Mo. 348; *Burghart v. Brown*, 51 Mo. 600; *State v. Linney*, 52 Mo. 40; *State v. Branstetter*, 65 Mo. 149; *State v. Carlisle*, 57 Mo. 102; 1 Greenl. Ev., secs. 170, 213, 218.

*M. Kinealy* and *James R. Kinealy*, for respondent.

(1) The ruling of the court below upon the point raised by appellants in this court was correct. *Parsons v. Milling Co.*, 7 Mo. App. 594; 2 Whart. Ev., sec. 1108; 1 Greenl. Ev., sec. 201; *McAuley v. Harris*, 71 Tex. 631,

639; *Garey v. Nicholson*, 24 Wend. 350; *Plantner v. Plantner*, 78 N. Y. 90, 102; *Grattan v. Ins. Co.*, 92 N. Y. 274, 284; *State v. Linney*, 52 Mo. 40; *Best v. Hoeffner*, 39 Mo. App. 682, 684. (2) Appellants made no statement to the court of what they expected to prove by the excluded testimony. *Jackson v. Hardin*, 83 Mo. 175.

ROMBAUER, P. J.—This is an action to recover damages for personal injuries caused to the plaintiff through alleged negligence in the handling of an elevator by an engineer in the employ of defendants. That was the only negligence alleged, and the only one on which the defendants could go to the jury, and the only one on which the jury, under the instructions of the court, could find for the plaintiff. The jury did find for the plaintiff, and the defendants, appealing, assign for error that this result was brought about by the erroneous ruling of the court in excluding evidence offered by them, to which ruling they excepted at the time, and still except. Whether evidence was excluded which the defendants were entitled to have admitted, and whether such exclusion constitutes prejudicial error, are the questions presented by this appeal.

O'Toole, a witness for plaintiff, was asked, in his examination in chief, whether he heard one of the defendants, at any time, say anything in regard to the management of the engine, or in regard to the engineer. He replied that he overheard the fragments of a conversation, in which one of the defendants stated that "the damned thing chocked," and "that the engineer was as good and faithful a man as he possibly could get." On cross-examination of this witness, it appeared that he overheard part of the conversation only. The defendant then called as a witness one Johnson, and offered to prove by him the entire conversation, and all that the defendant said in that conversation *on the subject-matter of the accident*, but was not permitted

by the court to do so. The view of the law taken by the court will best appear by the colloquy between the trial judge and counsel, when the evidence was offered. Counsel claimed that he was entitled *to the whole conversation.* The judge replied : "I suppose you are entitled to all the conversation relating to what O'Toole spoke about, so as to explain, if there was any explanation given, *the parts he related.*" The counsel said: "Further than that, I am entitled to all the conversation that took place there on the subject-matter." To this the judge replied : "I think not ; otherwise you would be getting in testimony, yourself, not drawn out by the other side at all. I think you are entitled *to it only so far as necessary to explain what the other witness testified to.*" In the further examination of this witness, the court emphasized its views by saying: "Mr. O'Toole testified,—in the first place, he says that Mr. Viernow said something to the effect that the 'damned thing chocked.' Now, anything that was said in connection with that you may state. Then he said, also, that the engineer was as good and careful a man, I think, as he could possibly get—something of that kind. You may state anything further said in that connection at that time. Those are the two essential parts in that conversation, as I remember it."

Counsel did not except to this ruling at the time. Before the examination of this witness was concluded, he was asked: "Was this *case* further talked of in that conversation than you have told?" To which the witness replied: "*It possibly was, but I don't remember what was the nature of it; I don't recall.*" Counsel thereupon said : "Now, I will ask the witness to state the substance of everything else that was said, if he can't give the words, with reference to this *case* in that conversation, about which Mr. O'Toole testified." Counsel for the plaintiff objected, unless the parts to be drawn out were particularly specified, which objection was sustained by the court, and the defendants excepted.

· The defendant, G. M. Viernow, when examined on his own behalf, stated that he was present at the conversation referred to. He was then told by the counsel: " *You may state everything that was said in that conversation.*" Counsel for plaintiff objected to the competency of the question, and the objection was sustained by the court, the defendant excepting. In the further examination of this witness, he was permitted to state, and did state, that, "In talking about the engine, the remark being dropped by some one present there, how that engine couldn't start to come down, the elevator couldn't start to come down at one time, I said in explanation that the cage being six feet long, that if a man stood at the outer edge of the platform, that it would kind of cramp it in the slide, and thereby retard its downward motion, or prevent its starting at all. I think the word I used was 'stuck.' It would stick, or something like that."

We might place our ruling, in affirming the judgment of the trial court, on the narrower ground that the ruling of the court, whether right or wrong, was not prejudicial to the defendants; that those parts of the conversation related by the witness O'Toole did not contain any admissions on part of defendant Viernow, bearing on the question of the only negligence complained of, namely, that of the engineer, but on the contrary contained the distinct statement, that "the engineer was as good and faithful a man as he could possibly get." We might also place our ruling on the ground that, as far as witness Johnson is concerned, it affirmatively appears that he stated all of the conversation which he remembered, and that, as far as the defendant is concerned, he apparently stated all that he said concerning the cause of the accident. But, as the case presents a question of almost daily recurrence in our trial courts, I am directed by my associates to place our ruling on the broader ground, that conceding, as we

must, that the views of the trial court, when gauged by the expressions of the judge, were too narrow, yet the rulings of the trial court, to which exceptions were saved, were correct, because the claim of counsel for the defendants and his offer of evidence was too broad.

It will be seen, from what we said above, that the only rulings excepted to are that witness Johnson was not permitted to state everything that was said in the conversation *with reference to this case*, and that defendant Viernow was not permitted to state *everything that was said in the conversation*.

The rule was thus stated by ABBOTT, C. J., in the *Queen's case*, 2 Brod. & Bingham, 298 : "If a counsel chooses to ask a witness as to anything which may have been said by an adverse party, the counsel for that party has a right to lay before the court the whole which was said *by his client* in the same conversation ; not only so much as may explain or qualify the matter introduced by the previous examination, but even matter not properly connected with the part introduced upon the previous examination, provided only that it relate *to the subject-matter of the suit ;* because it would not be just to take part of a conversation as evidence against a party, without giving to the party, at the same time, the *benefit of the entire residue of what he said on that occasion.*

*Prince v. Samo*, 7 A. & E. 627, was an action for malicious prosecution. The plaintiff called his attorney as a witness. The opposite counsel on cross-examination asked him whether the plaintiff had not, in the trial of another cause, stated that he had been repeatedly insolvent. On re-examination the attorney was asked whether the plaintiff had not also on that occasion given an account of the circumstances out of which the arrest had arisen, and what the account was, for the purpose of laying before the jury proof, that the arrest was without cause and malicious, of both of which facts, there was scarcely any evidence, or none

whatever.   Lord DENMAN, in deciding that this last inquiry was improper, said:   "My opinion was that the witness might be asked as to everything said by the plaintiff, when he appeared on the trial of the indictment, that could *in any way qualify or explain the statement as to which he had been cross-examined,* but that he had no right to add *any independent history of transactions wholly unconnected with it.*"   In the same case Lord DENMAN criticises the rule as stated by ABBOTT, C. J. ( Lord TENDERDEN ), in the *Queen's case* as too broad, and says it was not the recognized rule in England.

These two cases are generally recognized as illustrating the two different views on this question, and courts in this country, as far as they have been well advised, have adopted one or the other of these views. I have set the language of these learned judges out in full, as far as it bears on the question, because it is very frequently misquoted.   Mr. Starkie and Prof. Greenleaf, in their works on evidence, both rely on the *Queen's case* for a statement of the rule, while the later editions of Mr. Phillips on that subject adopt the rule as stated in *Prince v. Samo,* which probably is the unquestioned English rule of the present day.   As *Prince v. Samo* was not reported until 1839, and *Howard v. Newson,* 5 Mo. 323, where the rule is first stated in this state, was decided at or before that time, it is probable that Judge TOMPKINS had the rule as stated in the *Queen's case* in view, when he, in that case, declared:   "There is no principle of law better established than this, that, when the declarations of parties to a suit are given in evidence against them, the whole conversation, that took place at the time the declarations were made, is admissible in evidence ; and whatever the said party may have declared in his own behalf, the jury may take into consideration at the same time they receive whatever he may have admitted against his own interest.   If then, the admissions of

Woodson, that he had sold the corn of the plaintiff, were given in evidence against him, equally ought his declarations, that he sold the same corn under execution, to go in evidence to the jury in justification of the act.''

It will be seen by the above that, while the general rule, as stated by the learned judge, is broad enough to coincide with the rule as stated in the *Queen's case*, its application to the facts of the case is strictly within the rule stated in *Prince v. Samo*.

In the case of *Reevs v. Hardy*, 7 Mo. 348, the suit was upon a note. The defendants gave in evidence the plaintiff's receipt, executed subsequent to the maturity of the note, for all debts and demands up to date, and his admission of this receipt in conversation. It appeared that, in the same conversation, the plaintiff also stated that ''the receipt had nothing to do with the bond in suit.'' The jury found for the plaintiff. The complaint on appeal was that this finding was against the receipt and plaintiff's admission, but Judge TOMP-KINS said: ''It is sufficient to observe that, as the plaintiff in error gave in evidence the admissions of Buckner against his own interest, it was perfectly correct that what Buckner stated in the same conversation in his own favor should go to the jury.''

In *Burghart v. Brown*, 51 Mo. 600, the suit was upon a note, the execution of which was denied under oath. The defendant gave evidence tending to prove that the note was a forgery. The plaintiff introduced a witness who related part of a conversation in which the defendant stated that he had signed no note, but that it was a contract; that the plaintiff thereupon stated to the defendant he wanted to know whether it was a forgery or not; that, if it was, they could pursue the man who sold him (the plaintiff) the note, and overtake him yet, and that he would pay half the expenses, if Brown (the defendant) would pay the other half. The plaintiff then asked the witness to

state "what answer the defendant made to this proposition." The question was objected to and excluded. This was the sole error complained of, and the judgment of the trial court was reversed on the sole ground that this ruling was erroneous. Judge VORIES, in delivering the opinion of the court, said :

" It is difficult to see upon what ground the evidence was rejected. The witness had detailed part of a conversation had between the plaintiff and defendant; the conversation was about the execution of the note in controversy, and was exactly pertinent to the issue being tried. The witness was permitted to testify to facts which tended to prove that the defendant had not executed the note, and the plaintiff had a right to prove all that was said by the defendant, so that the jury could see as to the consistency of his statements, and thereby give proper weight to the whole evidence. One part of the statements made in the conversation might modify other parts, so that it will be seen that there would be no safety in permitting evidence of part of a conversation upon the same subject, and excluding the balance, and in this case the court excluded the evidence because it was irrelevant. How could the court know that the answer of the defendant would be irrelevant until it was heard? The conversation was had about the very matter in controversy, *and either party had a right to have the whole conversation, a part of which had been detailed by the witness.* It is not for this court to say what the evidence would have been,—it is enough to know that the evidence might have been material. We cannot assume that what was excluded would have been irrelevant, or what weight the jury would have given it." *Howard v. Newson, supra ; Reevs v. Hardy, supra,* and 1 Greenleaf on Evidence, sections 201 and 202, are cited by the court in support of the propositions stated.

In *State v. Linney,* 52 Mo. 40, the facts upon which the ruling is based do not appear. Judge WAGNER,

delivering the opinion of the court, says : "The first objection relied on, that the court erred in excluding a part of the conversation of a witness, when it had admitted the balance, is not good. The question propounded the witness in his cross-examination, and the testimony sought to be elicited, *related to an entirely different transaction from what he had been previously testifying to, had no necessary connection or congruity with it, and was not part of the same conversation.*"

In *State v. Carlisle*, 57 Mo. 102, the question arose, not on the admission of evidence, but upon an instruction, which declared : " In considering what the defendant said after the fatal act, the jury must consider it all together. * * * What he said against himself, the law presumes to be true, because against himself. But what he said for himself, the jury are not bound to believe, because said in a conversation proved by the state." Judge WAGNER, in deciding that this instruction was correct, said :

"Though it is generally true that a party's admissions against himself are true, else he would not make them ; yet to entitle them to be received in evidence, they must all be taken together, as well the part that is for him, as that which is against him. For though some part may contain matter favorable to the party, and the object is only to ascertain that which he has conceded against himself,—for it is to this only that the reason for admitting his own declaration applies, namely, the great probability that they are true,—yet, unless the whole is received and considered, the true meaning and import of the part which is good evidence against him cannot be ascertained. *But though the whole of what he said at the same time, and relating to the same subject, must be given in evidence,* yet it does not follow that all the parts of the statement are to be regarded as equally worthy of credit ; but it is for the jury to consider, under all the circumstances, how much of the whole statement they deem worthy of

belief, including as well the facts asserted by the party in his own favor, as those made against him." 1 Greenleaf on Evidence, section 201, is cited in support of the proposition stated.

In *State v. Branstetter*, 65 Mo. 149, the following appears: "The state introduced H. Glasscock, the sheriff, who testified as follows: 'Defendant came into my custody about five minutes after the shooting. I asked him why he had shot Lowry. He said he did not know why he had done it; and defendant continued to talk about the matter, when Esq. Brashears told him not to talk so much, or not to talk about the matter. I then took defendant to Esq. Brashears' house. He continued to talk all the way down there. We ate supper together, and, after an hour or so, defendant and I went to bed. *Defendant was talking about the matter all the time, from the time I asked him why he had shot Lowry, until we went to bed.*' On cross-examination, he said: 'This conversation between defendant and myself, he doing the most of the talking, *was continued with but little interruption from the time I asked him why he shot Lowry, until we went to bed. After Brashears told him not to talk, the defendant continued the conversation about the shooting, as we went along the street to Brashears' house.*' The defense asked what else defendant said about the shooting of Lowry, but the court sustained an objection to the witness' testifying to any of the conversation, except that which passed before Brashears told defendant not to talk about the matter, and in this, we think, that the court erred. Although Brashears told him not to talk about the matter, he did not cease to talk in answer to the sheriff's question, and *the state had no right to call for a portion of his statement, and have that excluded which followed Brashears' warning.* If he had ceased to talk when Brashears told him to do so, and thus broke off an explanation of the killing he was making to the sheriff, it was error to admit that fragment of the

conversation, which preceded the interruption by Bra-
shears. If, on the contrary, he did not heed the inter-
ruption, but continued the conversation, the defense
was entitled to all that he said in answer to the sheriff's
inquiry; so that error was committed in either view
of the question." Greenleaf on Evidence is cited in
support.

These are all the Missouri cases decided by the
supreme court, which the industry of counsel and my
own researches on the subject could collect. In not one
of them is either the *Queen's case* or *Prince v. Samo*
cited or referred to either by the court or counsel. I
have set them out in full, because my associates are of
the opinion, in which I cannot concur, that the subse-
quent cases decided in this state have modified the
declaration of the rule, as stated by Judge TOMPKINS
in *Howard v. Newson, supra.* I have also set them out
in full in order to show, that not one of these cases car-
ries the practical application of the rule to the point in
judgment beyond the rule, as limited in *Prince v. Samo.*

The main difficulty in many cases, however, is not
so much the statement of a correct and philosophical
rule on the subject as its proper application to the point
in judgment. The rule, as stated by ABBOTT, C. J., in
the *Queen's case,* may not be logically correct, when
subjected to the crucial test of a strict analysis, but it is
certainly simple and easily understood, while the rule
laid down by Lord DENMAN, in the later case, even
though, logically, more correct, may embarrass judges
when they seek practically to apply it. In *Rouse v.
Whited,* 25 N. Y. 170, which is the leading case in
New York on the subject, the entire opinion is devoted
to the discussion of these two rules. The court criti-
cises the logical soundness of the rule in the *Queen's
case,* and adopts the rule as stated by Lord DENMAN,
and immediately proceeds to make the following appli-
cation of it to the point in judgment. The action was
one to recover money, alleged to have been paid by the

plaintiff for the defendants. A judgment had been recovered against both plaintiff and defendants upon a note made by the defendants, upon which the plaintiff was indorser. The judgment was assigned to the defendants, who caused an execution issued thereon to be levied upon certain property. The sheriff testified that one of the defendants had told him of the property, and had said it was the plaintiff's, and that he then levied on it. On cross-examination, he was asked whether the defendant did not tell him, in the same conversation, "that the execution belonged to the plaintiff to pay—that it was his debt." This was ruled out, and the propriety of this ruling was the only question presented on appeal. Judge SUTHERLAND, after a full discussion of the two English cases above referred to, and all the New York cases on the subject, adopts the statement of the rule in *Prince v. Samo* as the correct rule, and thereupon decides that the question was improperly ruled out, and reverses the judgment on that ground alone.

I confess that I find some difficulty in reconciling the statement of the rule, as made by the learned judge in that case, with its practical application to the point in judgment. I cannot well conceive how the statement, that the debt in the execution was the plaintiffs' debt, did in any way tend to *explain or qualify the other statement*, namely, that the property levied on under the execution was the plaintiffs' property. It seems to me that the latter statement was rather the statement of an independent fact in the defendant's favor. Still, the fact remains that the exclusion of the statement did, in the opinion of the learned judge, even under the rule as established in *Prince v. Samo*, if rightly understood, furnish ground for the reversal of the judgment.

An exhaustive examination of a number of American cases satisfies me that, while the rule is stated in a great many different ways, and in some cases is stated even

broader than as stated by ABBOTT, C. J., it is next to impossible to deduce from the decided cases any rule, clearly formulated, which we could announce as the American rule on that subject, supported by the weight of authority.

The nearest approach to a uniform rule, as deduced not from the declarations of judges, but from the practical application of principles to the points in judgment in the various cases, is this:   Where part of a conversation is offered in evidence, containing admissions of a party to the suit, he may show, either by his own testimony or that of third persons, everything that was said by him in the same conversation on the subject to which the admission relates, as well as everything which may tend to qualify or explain the particular statement testified to.   In the case at bar, the admission proved, if it had any relevancy at all, had reference to the cause of the accident.   The defendant was, therefore, entitled to prove, by himself or others, anything additional he may have said in the same conversation as to the cause of the accident.   In explanation of his remark, he was entitled to prove what led up to it.   In fact, he was entitled to prove anything which was said by him, or said by others, and explanatory of what was said by him as to the cause of the accident.   If he had confined his offer to this, the judge, under the views taken by him, would probably also have ruled against him, and, if he had *then* saved his exceptions, he would have had good reason to complain of the error.   As it was, the offer was to prove *everything that was said about the case* at one time, and, at another, *all that was said in the conversation*, and the only exceptions saved were to the court's not permitting the witness to state either. Under the views above stated, we cannot put the court in the wrong on either of the rulings properly excepted to.

We may add that in *Parsons v. Yeager Milling Co.* (abstracted 7 Mo. App. 594, but not reported in

full), which is the only case in this court presenting the same point for decision, the ruling of this court was in strict harmony with what is above said. The language of the learned judge who delivered that opinion was probably not sufficiently precise, and may have led the judge of the trial court in the present case to confine the defendant's right of proof within too narrow limits, but the point decided was decided in strict conformity with the true rule, as we understand it, and as we decided it above.

All the judges concurring, the judgment is affirmed.