Richmond, P. J.
This was an action to recover overdue interest on a promissory note. By the complaint it is alleged that on the 28th day of October, A. D. 1886, at Denver, Colorado, the defendant, Ira W. Pendleton, made his promissory note in writing on that date, and thereby promised to pay to the order of one George M. Cheney five thousand dollars on or before five years after date, with interest at six per cent per annum. The note is set out in the complaint and is in words and figures as follows:
“ $5,000. Denver, Colo., Oct. 28, 1886.
“ On or before five years after date, for value received, I *509 promise to pay to the order of George M. Cheney, Esq., five thousand ($5,000) dollars, with interest at six per cent, per annum, payable annually. Interest and principal, payable at Denver. ' Iba W. Pendleton.”
And indorsed on the back:
“ Without recourse to me.
“ Geobge M. Cheney.”
“ Interest paid to April 28, ’89.
“H. L. Pbentice.”
This note, it is alleged, was thereafter transferred by Cheney to Prentice, and by Prentice transferred to plaintiff, Smissaert, for a valuable consideration, and that he is now the owner thereof. That on the 28th day of October, A. D. 1889, there became due and there is now due on said note $450 interest; that defendant has not paid the same nor any part thereof.
For a first defense defendant answered-that as to whether the note described in the complaint was indorsed by George M. Cheney or H. L. Prentice, or transferred for value or at all to plaintiff, who became or now is the owner thereof, he has not and cannot obtain sufficient knowledge or information upon which to base a belief.
For a third defense it is alleged that Prentice and Cheney kept what is commonly known as a bucket-shop where people were generally invited for the purpose of gambling in different commodities ; that they printed and received telegrams, gave prices in the Chicago market; that they kept a report of bets and moneys advanced and risked by different persons ; and that the gambling was upon the future rise or fall of the prices in the Chicago market of any of these commodities at such future time as they might desire. . That a certain amount of money was in every instance required to be put up as a margin to cover any loss which the person so gambling might sustain. That this defendant gambled in the bucket-shop of Prentice and Cheney on the price of grain in the Chicago market as quoted and posted in the gambling house,, that no delivery was ever intended, made or demanded; *510 that no grain was ever sold or ever intended to be; that the whole business was bets and wagers on margins, depending for profits or losses on the fluctuations of the prices of grain in said market. That this note for §5,000 so transferred was given in satisfaction of losses made by defendant while so dealing or gambling with Cheney and Prentice.
A demurrer was interposed to the second defense, which was sustained. A reply was made to the third defense, and upon the issues thus made trial was had and by direction of the court verdict was rendered for plaintiff in the sum of §450.
It is contended by appellant that this note is absolutely void in the hands of an innocent holder, and it is insisted, in the pleading, .that it was given in satisfaction of losses sustained by defendant while gambling in the rise and fall of wheat in the Chicago market.
Elaborate briefs have been filed in support of this contention. Upon the trial of the case plaintiff introduced the note in evidence and thereupon rested. Thereafter the defense called Ira W. Pendleton, the maker of the note, who testified as follows :—“I am engaged in mining principally now. I knew the firm of Neff, Prentice & Co., in the year 1886. I had transactions with them dealing in options in wheat in a ‘ bucket-shop ’ they had here. My transactions were not limited in any way * * *. The doors were always open for anybody that came. The transactions were private—they kept the curtains down generally. They advertised to deal in all kinds of grain, stocks, oil and pork.” He then says :—“I had a conversation with Mr. Smissaert after this—he came to see me, and said that he held this note, and I told him it was not worth the paper it was written on; that I had never received a cent on it in any way, shape or manner. It was only put in their hands in trust, with a promise that they would never use it—that they wanted to get a little credit at the First National Bank, and they were in a place where they were liable to fail if I did not assist them. They got me into the back room and told me I should never *511 lose a cent by it, with a promise that it should never go on record, and that they should merely show these papers. I did not tell that to Mr. Smissaert. I told him the note was worthless and I would not pay it. I believe I did tell him why it was worthless—I don’t remember exactly word for word what I said. I tried to state the facts in the case. Mr. ‘ Neff is the agent, more than any other, that caused me to give this note. He was president of Neff, Prentice & Co.,. and they merely wanted to use it to get a little credit at the First National Bank, and I suppose make these telegrams. I told Mr. Smissaert, if I remember, that the note was worthless, and why it was worthless; I don’t know that I stated all these particular facts; but I told him the note was worthless, and I would never pay it. He said the note was not due—it was the interest he wanted. I told him I would pay no interest—that I would not have anything to do with it. I noticed those indorsements. The indorse- ■ ment says, ‘ interest paid till 1888.’ I never paid any of the interest on that. I knew Mr. Smissaert before I met him in regard to this note. I had some little mining stock transactions with him. I met him several times at my office. He knew where my office was on Holladay street, near 15th,— he came to my house after this transaction. I met him on the street only, before that; but never met him in any place of business. I don’t remember of anything more on the street than passing the day, and probably talking about the mining property. He knew what my business was, but I could not say that he knew that I was dealing in grain and options in grain. I kept that secret. I don’t know whether Mr.’ Smissaert had any knowledge of the firm of Neff, Prentice & Co.”
Mr. Smissaert who was called on behalf of defendant testified :—“ I am the plaintiff; I traded for the note offered in evidence about the thirteenth of March, 1889. I can fix the date from papers in my pocket; I paid property for this note, a house and two lots, worth $5,200; the value of the note at that time was $5,000. I got $2,000 cash and the *512 note for the house and lots.' It was stated' to me a,t the time I bought the note, that the note was secured by property in Duluth, Minnesota, worth 117,000 ; and that it was a six per cent note for five years. * * * It took three or four days to make the trade. Those indorsements were on ■ the note at the time I received it, exactly as they are now. I am sure of that. There is no chance that I can be mistaken on this point.”
In the light of this testimony we are unable to see what relation the business of Neff, Prentice and Cheney, or Prentice and Cheney had to the transaction. We cannot under: stand why the defendant should have put himself forth in the record as a gambler in grain options, or should have admitted that he had' dealt in those commodities and met extraordinary losses. He does not testify in 'support of the defense, but says' that it was an accommodation paper executed by him, secured by a mortgage upon property in Duluth, Minnesota, which he loaned to the firm for the- purpose of saving their credit, with the promise that they would not •use it or in any way utilize it save and except to show it.
Under the testimony, it is evident that the defense could not be legitimately relied upon to defeat recovery. He cannot be' heard to insist upon the validity of the defense, that the note grew out of a gambling transaction, because he has established by his own testimony and by that of his witness, Smissaert, that it is not true. The fact that the plaintiff testified that he is a bona fide purchaser for value without Information of any defense of any kind or character to the note, that he bought it before maturity, paying its full face value is undisputed. . He declares himself to be. the owner of the note and swears that the indoi'sements were on the note at "the time he received it.
We are not called upon to decide whether or not dealing in the rise and fall in the prices of grain through the instrumentality of bucket-shops is contrary to good policy or. in violation of the express provisions of our statute.. The testimony'of defendant relieves us entirely from, this .bur *513 den and labor, and we are equally confident that authorities in support of the conclusion of this court are unnecessary.
Plaintiff swears that he was a bona fide purchaser; that he purchased for value before maturity without notice of anjr defense or defects. The note contained no indorsements, marks or signs wherewith the plaintiff could be charged. The defendant swears that he delivered it as accommodation paper under a promise that it should not be used or transferred, but, nevertheless, having permitted it to pass out of his hands into the commercial world, he stands charged with the obligation to pay.
It is said that the court erred in charging the jury to return its verdict in favor of plaintiff for the sum of $450; and, that the court erred in refusing to instruct the jury as requested by defendant. We are not prepared to admit this because we think the testimony introduced on behalf of the plaintiff and defendant clearly warranted the court in directing a verdict for plaintiff for the sum claimed.
The instruction asked and refused is in words and figures as follows:
“ The court instructs the jury that the note in controversy, on which it is alleged by the plaintiff that one and a half years interest is due, and for which interest this suit is brought is made payable to George M. Cheney, and that the plaintiff claims title to said note by indorsement from said Cheney to one H. L. Prentice, and by said Prentice to plaintiff, and that to entitle the plaintiff to recover in this action, the plaintiff must prove the genuineness of the indorsement of said note by said Cheney to said Prentice, and also the genuineness of the indorsement of said note by said Prentice to plaintiff; that, if the plaintiff has failed to prove the genuineness of either of said indorsements, the jury will find for the defendant.”
Defendant was not entitled to this instruction. Plaintiff proved that he received the note before maturity without notice of any defense and with the indorsements upon the note, and he thereby made prima facie proof, thus casting *514 upon the defendant the burden of disproving the genuineness of the indorsements if he could.
' In Wyman v. Colorado National Bank, 5 Colo. 30-33, it is Said: “ The possession of the paper by the defendant as such indorsee imported, prima facie, that it was acquired in good faith for full value, in the usual course of business before maturity, and without notice of any circumstances impeaching its validity, and that such holder was the owner thereof, and entitled to recover the full amount against all prior parties ; and although the burden of proof might be shifted during the course of the trial, yet when such possession is once shown, the burden of proof is then upon the one seeking to impeach any of the elements of validity or rights of the holder which such possession implies.”
In Poorman v. Mills & Co., 35 Cal. 119, it is held that, “ Where a promissory note is indorsed in blank the title and right of action pass by delivery, and the note is payable to the bearer.”
“The presumption is that the indorsee of a promissory note, is a holder for value, and the burden of proof is on the party denying that it is so held.”
■ In Wayland University v. Boorman, 56 Wis. 657, it is held that, “ In an action upon a promissory note, by an indorsee, the production of the note duly indorsed to the plaintiff is prima facie proof of the assignment thereof to him before due and for a valuable consideration.” Hays v. Hathorn et al., 74 N.Y. 487.
• In Daniels on Negotiable Instruments, § 633, this doctrine is announced: “ A bill or note payable to bearer, or indorsed in blank, may be transferred like currency by mere delivery.” * * *
Section 812:—“The mere possession of negotiable instruments, produced in evidence by the indorser, or by the assignee where no indorsement is necessary, imports prima facie that he acquired it bona fide for full value, in the usual course of business, before maturity, and without notice of any circumstances impeaching its validity; and that he is the own *515 er thereof, entitled to recover the full amount against all prior parties. In other words, the production of the instrument and proof that it is genuine (where indeed such proof is necessary), prima facie establishes his case; and he may there rest it.”
Section 1200 :—“ Possession is in itself prima facie evidence of the right of the party to sue and receive the money when he holds under a legal title, and also that the title, although not expressly, is. actually vested in him. And therefore in order to defeat his suit, it must be shown that he is a mala fide holder.”
It is insisted by appellant that the court erred in rejecting proof offered. The offer was as follows:—
“We propose to show the character of the business carried on in this place as alleged in our third defense, in detail and in particular. We will then sajq that growing out of the evidence will be such circumstances, together with the evidence that is already in the case in connection with the evidence of Mr. Pendleton, that it will be sufficient to go to the jury on the matter of notice to Mr. Smissaert as to the consideration of this note at the time he received it.”
> We think the action of the court in declining to admit evidence thus offered was correct. The offer itself was too indefinite, but if it were not the court could not have considered it because the character of the place run by Cheney and Pendleton would not in the face of his own testimony contribute to support his contention. The appellant admits that he gave the note, he gave it to be used, true not to be transferred, but to be used by the payee in obtaining credit in the First National Bank. The evidence tends to show he knew it had been used; This is established by the letter of the Union National Bank. If it is true that it was without consideration, as is claimed, still we do not see how that would contribute to defeat the right of recovery by Smissaert, who took the note in question which imported a consideration, and paid for it a valuable consideration by way of exchange before its maturity.
*516 We are clearly of the opinion that the appellant, defendant below, by his admission, warranted the result reached by the court and jury, and we see no error in the record which authorizes us in disturbing the verdict.
The judgment must be affirmed.

Affirmed.