Argued October 10, affirmed October 23, 1917, rehearing denied January 8, supplemental petition for rehearing denied February 5, 1918.

# COLUMBIA REALTY INVESTMENT CO. *v.* ALAMEDA LAND CO.*

### (168 Pac. 64, 440.)

**Brokers—Right to Commission.**

1. As a general rule, a broker is entitled to its commission when it produces a purchaser with whom the seller made a binding contract of sale; but the rule is subject to modification by the contract of the parties.

> [As to when a broker becomes entitled to commissions, see note in 28 Am. St. Rep. 546.]

**Brokers—Contracts—Construction.**

2. A broker's contract for commissions, to be paid on a basis of 20 per cent of the selling price out of the first moneys collected from the sale of lots, entitling the agents to retain out of each payment collected such amount as was then due and payable, but not otherwise, entitles the broker to commission, not at all events, but only out of a specific fund.

---

*On effect of contract expressly making broker's right to commissions dependent upon sale of property or other condition beyond that ordinarily implied, see note in 29 L. R. A. (N. S.) 533.

As to broker's right to commission, where purchaser is unable to ultimately conclude deal, under special terms of employment of broker, see note in 20 L. R. A. (N. S.) 1168, 1172, citing and reviewing *Bush v. Abraham,* 25 Or. 336 (35 Pac. 1066), and *Holbrook v. Investment Co.,* 30 Or. 259 (47 Pac. 920); also *Riggs v. Turnbull,* 105 Md. 135 (66 Atl. 13, 11 Ann. Cas. 783, note; 8 L. R. A. (N. S.) 824). See, also, note in 44 L. R. A. 605; 9 C. J. 594, 632.    REPORTER.

**Brokers—Commission—Specific Funds.**

3. A promise to pay a broker commission out of a specific fund, to be collected by him, is enforceable only on allegations and proof that the fund named is adequate for the payment demanded.

**Assignments—Broker's Contract—Right to Commission.**

4. Mere fact that a broker, having a contract for commissions to be paid out of a certain fund, to be collected from the sale, assigned his contract, did not give the assignee a right to his commission at all events; but he was entitled only to a commission on the terms on which the broker would have been entitled thereto.

**Appeal and Error—Presumptions.**

5. In the absence of bill of exceptions containing the testimony, the court on appeal is bound to assume that a finding is supported by competent proofs.

**Trial—Reception of Evidence.**

6. Where the complaint failed to state facts sufficient to constitute a cause of action, and the affirmative matter in reply was material only as tending to rebut the counterclaim pleaded in the answer, testimony in support of the reply could be received only in rebuttal, and it was not error to reject it as part of plaintiff's case in chief.

**Trial—Offer of Proof—Sufficiency.**

7. An offer of proof of certain facts upon which plaintiff relied, without naming witnesses or stating the testimony expected to be elicited from them, was insufficient.

**Brokers—Actions—Evidence—Admissibility.**

8. In a broker's action for commission, to which under his contract he was entitled only if the sale was completed and the price paid, it was competent for the defendant to prove that it canceled contracts held by purchasers who were unable to pay.

**Brokers—Actions—Findings—Sufficiency.**

9. Where the court found that the broker had received all commissions to which he was entitled, except a certain sum, that all the cancellations of contracts had been necessary, that the expense thereof was a certain sum to be borne under the contract proportionately by the broker and defendant, the findings supported a judgment in defendant's favor for the difference between the commission due and the balance due defendant because of the cancellations, and failure to make additional findings was not error.

## ON PETITION FOR REHEARING.

**Appeal and Error — Burden to Show Prejudice — Exclusion of Evidence.**

10. The presumption being that there was no error when plaintiff's testimony was excluded, the burden was on plaintiff to show that such testimony was admissible, and that its exclusion was prejudicial, in order to work reversal, in view of Section 556, L. O. L., permitting reversal only for errors substantially affecting the rights of the appellant.

**Appeal and Error — Presumptions — Recital — Certificate of Offer of Proof.**

11. The certification of a bill of exceptions, which recited an offer of proof, did not raise the presumption that the witnesses offered were present and the evidence was properly offered, or import waiver by the trial court of the calling of witnesses.

**Trial—Offer of Proof—Sufficiency.**

12. An offer of proof should state facts, not conclusions, and its language should be distinct and specific and not vague or general; and it is not sufficient that it state the ultimate facts in language appropriate to a pleading, but it must set out the evidentiary facts.

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.   Statement by MR. JUSTICE MCCAMANT.

This is an action brought to recover a balance of commissions alleged to be due plaintiff for the sale of parcels of defendant's property in Multnomah County. It appears that on March 9, 1912, the defendant entered into a contract with E. Z. Ferguson and H. L. Hamblet for the sale of the property in question and for the performance of other services. Ferguson and Hamblet were given the exclusive sale of the property for a period of nine months at a schedule of prices attached to the contract as an exhibit. It was provided that sales might be made for cash or on installments. In the latter event at least 10 per cent of the purchase price was to be paid in cash and the balance in monthly installments of at least one per cent of the purchase price, provided that the entire price should be payable within five years. Attached to the contract was a form of sales agreement which provided that on default of the purchaser in making the stipulated payments his contract could be forfeited.

The contract of defendant with Ferguson and Hamblet provided that in case the latter should sell $25,000 worth of property within six months they

should be entitled to an extension of three months on their sales contract:

"It being further expressly understood and agreed that if said total amount of said sales does not aggregate the full amount of Twenty-five Thousand Dollars ($25,000.00) within a period of six months from the date hereof as aforesaid, that then and in that event the selling agency shall immediately terminate and be at an end, and said Agents shall have no further interest or right in or to or under this contract, except that they shall be entitled to their commission theretofore earned by them for selling lots hereunder as aforesaid, the same to be paid when collected by said Company; and in any event this contract and all rights hereunder, except as to the commissions earned, and in the event said contract shall be extended as aforesaid, shall terminate within nine (9) months from the date hereof and all rights of said Agents shall thereupon absolutely cease and determine."

It is probable that the parties originally contemplated only a six months' contract, which was to be extended if the agents sold the specified amount of property. As finally drawn, the contract covered a period of nine months at all events and contained the foregoing provision for its extension.

The compensation of the agents was covered by the following stipulations:

"Said Agents shall receive in full payment for their services under this agreement, commissions upon the selling prices set forth in said Exhibit 'C' as aforesaid, as follows:

"A total commission of twenty-five per cent (25%) on all sales made by or through said Agents, which said twenty-five per cent (25%) commission shall be divided as follows: Twenty per cent (20%) for selling said property and five per cent (5%) for collecting the purchase price and attending to the general affairs of the Company as hereinafter set forth. Said commissions shall be paid as follows: said Agents shall be en-

titled to take and receive a sum equal to twenty per cent (20%) of the selling price as aforesaid, out of the first moneys collected from the sale of each and every lot sold under this agreement.   The remaining five per cent (5%) of said selling price shall be paid as follows: two and one-half per cent (2½%) shall be paid when the purchaser has paid not less than twenty-five per cent (25%) of the said selling price of said lot, and two and one-half per cent (2½%) when said Agents have complied with all the terms and conditions of this agreement; provided, however, that said Agents may, at any time after fifty per cent (50%) of said selling price has been paid, upon furnishing said Company a good and sufficient bond with approved securities in an amount satisfactory to said Company, be entitled to withdraw said last-mentioned two and one-half per cent (2½%); said bond to be conditioned on their faithful compliance with all the terms, conditions and covenants of this agreement, except that said bond will not guarantee the selling of said property."

"Said Agents may retain out of each payment collected by them such amount, as herein provided, as may be then due and payable to them as commission aforesaid, but not otherwise, and said Agents must, upon demand of the Company, pay over to said Company all moneys collected by them as such agents less any commission retained by them out of such payments under authority of this agreement, and deliver with each payment so made to said Company a full and true itemized statement of the collection included therein and the commission retained out of such collection."

After other provisions, immaterial for present purposes, the contract recited:

"It is further agreed that the President and Secretary of said Company and Mr. O. L. Ferris of the Columbia Trust Company of Portland, Oregon, are hereby appointed a committee or board of arbitrators, with authority from time to time to raise the selling price of lots marked on said schedule 'C' as in their

judgment may seem best, and that such raise in price or value, that is to say: the amount over and above the present selling price as set forth in said schedule 'C,' not including the increase on account of city liens, shall, on all property sold, be divided equally, share and share alike, between said Agents and said Company, as a further commission to said Agents, provided that said additional commission shall not be paid until said Company has received fifty per cent (50%) of the purchase price of the lot or lots so sold, when it shall be paid upon demand to said Agents.''

On the same day that the above contract was entered into, Ferguson and Hamblet assigned to plaintiff the exclusive right to sell the property for the time stated and to receive the commission of 20 per cent provided therefor, the assignors retaining their other rights under the contract. Defendant assented to the assignment.

The complaint alleges the incorporation of the parties, the making of the foregoing contract, which was attached as an exhibit to the complaint, and the assignment from Ferguson and Hamblet to plaintiff. It is alleged that plaintiff effected sundry sales under the contract and that there are due and unpaid to plaintiff commissions on such sales aggregating $2,619.36. The complaint lists the property sold, the names of the purchasers and the unpaid commissions on each of these sales.

The answer admits the incorporation of the parties, the making and assignment of the contract and the negotiating of the sales specified in the complaint. The other allegations of the complaint are denied. It is affirmatively alleged that the sales contract contained the following provision:

''It is further understood and agreed that in the event that it shall become necessary to cancel any of

the contracts for sale on the installment plan, the expense of such cancellation an 1 foreclosure of such contracts shall be borne by the company and said agents in proportion to the amount that each shall have received on account of said sale."

The answer alleges that it was necessary to cancel and foreclose many of the contracts; that defendant's expense in that regard was $351.55, and that an apportionment of that sum in the manner provided by the contract would charge plaintiff with $309.26. The answer set up the amount paid by the purchasers on account of each piece of property sold and the disposition of these sums as between plaintiff and defendant. The answer alleged that plaintiff had received $222.19 in excess of commissions earned and judgment was asked for this sum and for $309.26.

The reply admits that the contract contained the provision quoted in the answer and except in the case of one lot admits that the amounts received by plaintiff were as stated in the answer. The reply takes issue with the allegations of the answer as to the amounts paid by the purchasers and denies that it was necessary to cancel any of the contracts.

As an affirmative reply to defendant's counterclaim, plaintiff alleges that the prices of the lots had been raised by mutual consent and that a market had been created for them by plaintiff's efforts; that defendant thereupon divided the unsold lots among its stockholders and that these stockholders offered the lots for sale at prices so low that previous purchasers were able to forfeit existing contracts and save money by buying lots equally desirable at the new prices. It is alleged that:

"If any contracts were forfeited or canceled, or if any purchasers failed to carry out their agreements

which they had executed upon the sale of lots to them through the plaintiff corporation, it was by reason of the defendant corporation having knowingly and wrongfully thrown upon the open market its lots at greatly reduced prices, as hereinabove set forth, and thus making it profitable for the said purchasers to seek to have their contracts canceled and annulled.''

The reply alleges that plaintiff's commission should be based on the purchase price of the property sold by contract without regard to cancellations or defaults and it is averred that the misconduct of defendant should estop it from resisting this claim.

It appeared that shortly before the expiration of the nine months' period covered by the contract the parties agreed to raise the prices of the unsold lots and some lots were sold by plaintiff at the higher prices.

The case was tried by the court without the intervention of a jury. The material findings of the lower court were these:

''That the plaintiff entered upon the work of selling the lots mentioned in said agency contract between said defendant and said Ferguson and Hamblet, and hereinafter referred to as the 'Agency Contract,' and among other lots sold by it, the plaintiff did sell the lots mentioned and described in paragraph six of the first cause of action in the complaint of the plaintiff herein, and the court finds that the practice adopted by the parties hereto, in the matter of the payment of commissions was to pay plaintiff out of the first money received on the purchase price of a lot sold by plaintiff, twenty per cent of the price for which it was sold, whether sold for the list price or for a higher price, and after the defendant had been paid fifty per cent of the purchase price, out of the first money thereafter collected the plaintiff was paid thirty per cent of the sum for which the lot sold in excess of the list price, if it was sold for any amount in excess thereof, and

the Court finds that on this basis or practice of computing and paying commissions the plaintiff had been paid all commissions earned by it at the time this action was instituted, excepting the sum of $65.16, which sum was then due it for commissions earned by it and unpaid.

"The Court also finds as a fact that it became necessary to cancel and foreclose certain contracts of sale made and procured by plaintiff of lots in the list attached to the agency contract aforesaid, because of the failure and refusal of the purchasers to make payment of the installments stipulated to be paid on account of the purchase price, and that the cost and expense of such cancellations and foreclosures aggregate the sum of $351.55, and that defendant had received on account of the purchase price of the lots, the contracts for which were canceled and foreclosed, the sum of $268.18, and plaintiff had received on account of the sale of such lots the sum of $2,081.67, and that defendant, having paid the total cost and expense of such cancellations and foreclosures, is entitled to recover of and from the plaintiff its proportion thereof, namely, the sum of $309.26, less the sum of $65.16 due plaintiff for commissions as above found, making the amount which the defendant is entitled to recover from the plaintiff $244.10."

The conclusions of law and judgment were in accord with these findings and plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Loyal H. McCarthy* and *Mr. J. Le Roy Smith,* with an oral argument by *Mr. McCarthy.*

For respondent there was a brief over the name of *Messrs. Fulton & Bowerman,* with an oral argument by *Mr. Charles W. Fulton.*

Mr. Justice McCamant delivered the opinion of the court.

1. Plaintiff contends that when it produced a purchaser with whom defendant made a binding contract of sale, it earned its commission of 20 per cent of the purchase price and its right to this commission was not lost by the default of the purchaser or the cancellation of his contract. This is the general rule: *Stewart* v. *Will,* 65 Or. 138, 140, 141 (131 Pac. 1027). But it is subject to modification by the contract of the parties. The material question here is whether the contract on which plaintiff relies contains a promise to pay commissions at all events or only out of a specified fund, to wit, the amounts paid by the purchasers. It is provided in paragraph 1 that in default of the extension tentatively provided for the agency should terminate "except that they (the selling agents) shall be entitled to their commission theretofore earned by them * * , the same to be paid when collected by said company."

In the second paragraph the contract specifies the commissions of the agents and provides:

"Said commissions shall be paid as follows: said agents shall be entitled to take and receive a sum equal to twenty per cent of the selling price aforesaid, out of the first moneys collected from the sale of each and every lot sold under this agreement."

The foregoing language plainly suggests an intent of the parties to pay commissions out of the moneys collected from the purchasers of the property. This intent is emphasized by the absence from the contract of an express promise of defendant to pay the commissions. Further light is thrown on the intent of the parties by the following language, found in paragraph 3:

"Said Agents may retain out of each payment collected by them such amount, as herein provided, as may be then due and payable to them as commission aforesaid, but not otherwise."

The language means that the agents are entitled to retain out of the moneys collected on each sale, such sum as shall suffice to pay the commission earned on that sale. They are not entitled to charge to defendant all commissions earned by all sales effected and retain out of their collections all moneys standing to their credit in such account. It affirmatively appears from the form of agreement attached to the sales contract that the parties contemplated that some of the purchasers would fail to make the monthly payments called for and that some of these agreements of purchase would have to be canceled. The sales contract makes provision for the apportionment between the parties of the expense incident to such cancellations.

In paragraph 8 there is provision for raising the prices of the lots and it is provided that:

"The amount over and above the present selling price * * shall, on all property sold, be divided equally, share and share alike, between said Agents and said Company as a further commission to said Agents, provided that said additional commission shall not be paid until said Company has received fifty per cent (50%) of the purchase price of the lot or lots so sold, when it shall be paid upon demand to said Agents."

2, 3. It may be conceded that the language of this contract is not well chosen to effect the purpose in view, but we think the intent of the parties sufficiently appears that plaintiff was to be paid commissions not at all events, but only out of a specific fund. Such a promise to pay is enforceable only on allegations and

proof that the fund named is adequate for the payment demanded: *Owen* v. *Lavine,* 14 Ark. 389, 396; *Waters* v. *Carleton,* 4 Port. (Ala.), 205; *National Sav. Bank* v. *Cable,* 73 Conn. 568, 572 (48 Atl. 428); *Fulton* v. *Varney,* 117 N. Y. App. Div. 572, 576 (102 N. Y. Supp. 608); *Morrison* v. *Austin State Bank,* 213 Ill. 472, 487 (72 N. E. 1109, 104 Am. St. Rep. 225, 233); *Kelly* v. *Bronson,* 26 Minn. 359, 360 (4 N. W. 607); *Welch* v. *Mayer,* 4 Colo. App. 440, 443 (36 Pac. 613, 614.)

It is held specifically that a real estate broker cannot recover commissions payable out of the purchase price without proof that enough of the purchase price has been paid to cover the commissions claimed: *McPhail* v. *Buell,* 87 Cal. 115 (25 Pac. 266); *Lindley* v. *Fay,* 119 Cal. 239, 243 (51 Pac. 333); *Boysen* v. *Frink,* 80 Ark. 254, 258 (96 S. W. 1056). Plaintiff cites *Hugill* v. *Weekley,* 64 W. Va. 210 (61 S. E. 360, 15 L. R. A. (N. S.) 1262), and *Cheatham* v. *Yarbrough,* 90 Tenn. 77, 80 (15 S. W. 1076). These were cases in which the brokers had produced purchasers able, ready and willing to buy and the sales were defeated through the fault of the owners. In the West Virginia case the purchaser refused to buy because the representations of the owner were not borne out by an examination of the property, and in the Tennessee case there was a substantial defect in the title. The question involved in the case at bar was not determinative of either of these controversies.

4. Plaintiff claims that as the assignment to it of a part of the sales contract left the collections wholly in the hands of Ferguson and Hamblet, plaintiff's rights are unaffected by the failure to collect the installments due from purchasers. A stream cannot rise higher than its source. We have seen that the contract pro-

vides only for a conditional payment of these commissions. Such being its effect as between the original parties, the stipulation for payment could not become absolute by the assignment to plaintiff.

5. Plaintiff's complaint contains no allegation that the fund to which plaintiff was to look for payment of the commissions claimed was adequate for such purpose and the finding of the lower court was that there was no fund applicable to such payment except $65.16. The testimony has not been attached to the bill of exceptions and we are therefore bound to assume that this finding is supported by competent proofs.

6. Plaintiff complains that the lower court refused to receive a number of specifications of evidence offered in plaintiff's case in chief. This testimony all went to support the plea of estoppel set up in the reply. The complaint failed to state facts sufficient to constitute a cause of action for the reasons above stated. The affirmative matter in the reply was material, therefore, only as tending to rebut the counterclaim pleaded in the answer. The testimony in support of these allegations of the reply could be received only in rebuttal and the court did not err in rejecting the proof as a part of plaintiff's case in chief.

7. In rebuttal plaintiff made the following offer:

"The plaintiff at this time offers to produce witnesses and prove that the cancellation of the contract —that all the cancellations of contracts which have been referred to in the case are the result of an interference by the Alameda Land Company in the way of dividing lots up among the stockholders prior to the expiration of the contract, throwing the same upon the market at prices away below the prices at which the Columbia Realty Company was authorized to sell the same; so that it was profitable for the purchasers to surrender the contracts and forfeit the moneys which they had paid upon the same, whereupon they

could repurchase the lots and still save money by doing so; and by the actual presence of stockholders upon the tract offering the lots at these reduced prices, some of the same lots which the Columbia Realty Company was trying to sell, and at a time prior to the expiration of their contract; that is, during the month of November, 1912."

Defendant contends that an offer of proof cannot be made without calling a witness and asking an appropriate question. In support of this contention we are cited to: *Ralston* v. *Moore,* 105 Ind. 243 (4 N. E. 673, 675); *Smith* v. *Gorham,* 119 Ind. 436 (21 N. E. 1096, 1097); *Tobin* v. *Young,* 124 Ind. 507 (24 N. E. 121, 123); *Darnell* v. *Sallee,* 7 Ind. App. 581 (34 N. E. 1020, 1021); *Gray* v. *Elzroth,* 10 Ind. App. 587 (37 N. E. 551, 552, 53 Am. St. Rep. 400). These authorities are in point and they are supported by the opinion of Mr. Justice MOORE in *First National Bank* v. *Oregon Paper Co.,* 42 Or. 398, 402 (71 Pac. 144, 971). In this opinion it is said:

"If the appellants were not allowed to prove their claim, they should have called witnesses, and stated to the court the testimony which it was expected would be elicited from them."

Plaintiff relies on this branch of the case on *Scotland County* v. *Hill,* 112 U. S. 183, 186 (28 L. Ed. 692, 5 Sup. Ct. Rep. 93). This case undoubtedly tends to support plaintiff's contention, but the offer of proof in that case was much more specific than in this. The name of the witness relied on was given and the precise testimony relied on was stated in the offer. In the case at bar no witness was named and the offer of proof was couched in the most general terms. We think that plaintiff should have named its witnesses and specified the acts of interference relied on. The

offer should have named the contracts of purchase which were canceled because of each act of interference by the defendant. Unless the calling of witnesses is waived by the court or by the adverse party, we think the better practice is to call the witnesses relied on and ask appropriate questions. If objections are sustained to these questions the time is ripe for an offer of proof. The court did not err in declining the offer in question.

8. Plaintiff's objection was not well taken to defendant's testimony showing that purchasers had failed to make their payments. It was competent for the defendant to prove by the witness Bosworth the practice of the defendant in canceling contracts held by purchasers who were unable to meet their obligations. We cannot say as a matter of law that these cancellations required formal action by the board of directors of the defendant.

9. It is finally contended that the lower court erred in refusing to make findings on some of the material issues raised by the pleadings. The court found that plaintiff had received all the commissions to which it was entitled except $65.16; that all the cancellations of contracts had been made as alleged; that the expense of such cancellations was $351.55, of which $309.26 was chargeable to plaintiff, and that all of these cancellations were necessary. These findings support a judgment in defendant's favor for $244.10. The finding that the cancellations were necessary negatives plaintiff's claim that the cancellations were due to defendant's unwarranted interference with the purchasers secured through plaintiff's efforts. The findings therefore determined the controversy and support the judgment. In such case the failure to make additional findings is not error: *Lewis* v. *First Nat. Bank,*

46 Or. 182, 188 (78 Pac. 990); *Freeman* v. *Trummer,* 50 Or. 287, 290 (91 Pac. 1077); *Naylor* v. *McColloch,* 54 Or. 305, 315, 316 (103 Pac. 68); *Wells* v. *Great Northern Ry. Co.,* 59 Or. 165, 175 (114 Pac. 92, 116 Pac. 1070, 34 L. R. A. (N. S.) 818).

The judgment is affirmed.    AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BEAN concur.

---

Denied January 8, 1918.

## ON PETITION FOR REHEARING.

(168 Pac. 440.)

On petition for rehearing.    Denied.

*Mr. Loyal H. McCarthy* and *Mr. J. LeRoy Smith,* for the petition.

*Messrs. Fulton & Bowerman, contra.*

Department 2.    MR. JUSTICE MCCAMANT delivered the opinion of the court.

We have given mature consideration to the exhaustive petition for a rehearing which plaintiff has filed. It is directed to so much of our opinion as sustains the action of the trial court in rejecting plaintiff's offer of proof on rebuttal.    We held the offer was properly rejected because no witness was on the stand to whom appropriate questions were asked, and also because the offer was couched in general terms and failed to specify the facts to be proved.

10. Plaintiff claims that these grounds of objection are untenable because the offer in the lower court was objected to only on the general ground that the testi-

mony offered was incompetent, irrelevant and immaterial. Many authorities are cited to the effect that when testimony is admitted over this general objection, the appellate court will not review an assignment of error based thereon unless the testimony is obviously inadmissible for any purpose. This principle is well established and is recognized by our own decisions: *State* v. *Martin*, 47 Or. 282, 292 (83 Pac. 849, 8 Ann. Cas. 769); *Hildebrand* v. *United Artisans*, 50 Or. 159 (91 Pac. 542); *Ferrari* v. *Beaver Hill Coal Co.*, 54 Or. 210, 222 (94 Pac. 181, 95 Pac. 498, 102 Pac. 175, 1016). In the case at bar, however, the testimony was excluded. The presumption is that there was no error and the burden therefor devolves on plaintiff to show that the testimony offered was admissible, and that plaintiff was prejudiced by its exclusion. In 1 Wigmore on Evidence, page 59, the rule is stated thus:

"When a general objection is sustained by the trial court, it may be presumed that the reasons were apparent to all parties without statement; and as the exception is here to be taken by the proponent of the evidence, it is fair to require him to make clear therein the basis of his claim for its admissibility, if he had rested on any specific ground; hence, the general objection will suffice, if on the face of the evidence and the rest of the case there appears to be any ground of objection which might have been valid (or, otherwise stated, if there is any purpose for which the evidence would conceivably be inadmissible)."

In 5 Jones on Evidence, 377, it is said:

"The rule that the objection should be specific has no application, however, where a general objection is sustained; in that case, the party against whom the ruling was made cannot urge that objection as too general."

The text quoted is supported by the following adjudications: *Tooley* v. *Bacon*, 70 N. Y. 34; *Baldwin* v.

*Threlkeld,* 8 Ind. App. 312 (34 N. E. 851, 35 N. E. 841);
*Leach* v. *Dickerson,* 14 Ind. App. 375 (42 N. E. 1031);
*Haas* v. *C. B. Cones & Son Mfg. Co.,* 25 Ind. App. 469
(58 N. E. 499); *Rosenberg* v. *Sheahan,* 148 Wis. 92
(133 N. W. 645); *Hurlbut* v. *Hall,* 39 Neb. 889 (58
N. W. 538, 540); *People* v. *Graham,* 21 Cal. 261, 266;
*Spottiswood* v. *Weir,* 80 Cal. 448 (22 Pac. 289). The
industry of counsel for plaintiff has discovered some
cases to the contrary, as *McKinnon* v. *Johnson,* 57 Fla.
120 (48 South. 910), and *Rush* v. *French,* 1 Ariz. 99
(25 Pac. 816, 824). These cases are out of harmony
with the weight of authority and we are forbidden by
our statute from following them. Section 556, L. O. L.,
provides that a judgment "shall only be reversed or
modified for errors substantially affecting the rights
of the appellant." The rights of an appellant are not
injuriously affected by the exclusion of inadmissible
testimony, even though the objection reserved thereto
is too general or is otherwise inadequate.

11. Several additional authorities are cited to the ef-
fect that when the trial court settles a bill of exceptions
reciting the offer of proof, it will be assumed on ap-
peal that the witnesses were present and the evidence
was properly offered; for example, *Biddick* v. *Kobler,*
110 Cal. 191, 196 (42 Pac. 578), and *Tathwell* v. *Cedar
Rapids,* 114 Iowa, 180 (86 N. W. 291). We do not
think that the certification of a bill of exceptions should
be given the effect contended for. It is the practice in
this state to incorporate in a bill of exceptions the ob-
jections to questions and the offers of proof in language
taken from the reporter's transcript and a trial court
refusing so to do would be regarded as unfair to the
unsuccessful litigant. The certification of the bill does
not import a waiver by the trial court of the calling
of witnesses in connection with an offer of proof. The

rule announced on the subject in the former opinion
is supported by the following additional authorities:
*Eschbach* v. *Hurtt,* 47 Md. 61, 67; *Chicago City R. Co.*
v. *Carroll,* 206 Ill. 318, 328, 329 (68 N. E. 1087); *Stevens*
v. *Newman,* 68 Ill. App. 549, 552; *Robinson* v. *State,*
1 Lea (69 Tenn.), 673. The reasons for insisting on
the calling of witnesses and propounding suitable
questions are stated in the first two cases cited.

There can be no doubt that the offer of proof was
properly rejected on the ground that it was general
in terms and did not specify the evidence available.
In *Reynolds* v. *Continental Ins. Co.,* 36 Mich. 131, 144,
Mr. Justice Graves says:

"In submitting propositions of proof it is requisite
that counsel should be distinct and clear. A proposi-
tion should embody the specific fact or facts in such
connection and in such terms as to be apprehended
and ruled in the intended sense by the trial judge, and
be examined and applied in the appellate court in the
proper light to test the accuracy of the ruling if an
adverse one. * * The facts proposed ought to be in-
dicated with sufficient clearness in regard to identity
and sense to enable the court and adverse counsel to
judge intelligently concerning their admissibility."

In 9 Enc. Evidence, 165, it is said:

"In making an offer to prove it is requisite that
counsel should be distinct and clear. The offer should
embody the specific fact or facts in such connection
and in such terms as to be apprehended and ruled upon
in the intended sense by the trial judge, and be ex-
amined and applied in the appellate court in the proper
light to test the accuracy of the ruling, if adverse. A
mere general proposition in so many words to make out
the case set forth in the pleadings is not one that the
court is bound to take into consideration and rule upon
as an offer of proof."

This rule is supported by the following authorities:
*Harmon* v. *Decker,* 41 Or. 587, 592 (68 Pac. 11, 1111,

93 Am. St. Rep. 748); *Van Arsdale* v. *Buck,* 82 App. Div. 383 (81 N. Y. Supp. 1017, 1019); *Matter of Bateman,* 145 N. Y. 623 (40 N. E. 10); *Middleton* v. *Griffith,* 57 N. J. L. 442 (31 Atl. 405, 408, 51 Am. St. Rep. 617); *Lewis* v. *Nenzel,* 38 Pa. St. 222, 225; *Reeves* v. *McComeskey,* 168 Pa. St. 571 (32 Atl. 96); *Cole* v. *High,* 173 Pa. St. 590 (34 Atl. 292, 294); *Bland* v. *O'Hagan,* 64 N. C. 471, 473; *Carlton* v. *State,* 8 Heisk. (55 Tenn.) 16; *Dwyer* v. *Rippetoe,* 72 Tex. 520 (10 S. W. 668, 673, 674); *Russell* v. *Lake,* 68 Ill. App. 440, 441; *Lyon* v. *Batz,* 42 Mo. App. 606, 618; *Wolfard* v. *Farnham,* 47 Minn. 95 (49 N. W. 528, 529); *Pendleton* v. *Smissaert,* 1 Colo. App. 508 (29 Pac. 521, 523); *Palmer* v. *McMaster,* 10 Mont. 390 (25 Pac. 1056, 1058); *Kennedy* v. *Currie,* 3 Wash. 442 (28 Pac. 1028, 1031); *Johnson* v. *Merry Mount Granite Co.,* 53 Fed. 569, 571.

12. An offer of proof should state facts rather than conclusions. Its language should be not vague, but distinct; not general, but specific. It is not sufficient that it state the ultimate facts in language appropriate to a pleading; the evidentiary facts must be set out.

In the instant case plaintiff's offer should have named the witnesses relied on; it should have identified the contracts of purchase surrendered as the result of the defendant's interference; the acts of interference causing the surrender of each contract should have been specified and the parties responsible for these acts should have been named.

A departure from the principles announced in the former opinion would establish a dangerous procedure not justified by reason or authority. The petition for rehearing is denied. AFFIRMED. REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BEAN concur.

NOTE.—Supplemental petition for rehearing was denied February 5, 1918, without a written opinion. REPORTER.