Argued January 15, affirmed January 29, rehearing denied April 9,
1918.

## HILL v. McCROW.*

(170 Pac. 306.)

**Pleading—Aider by Verdict.**

1. Where plaintiff's complaint alleged that the note was duly sold,
indorsed and delivered to him, and defendant's answer alleged that
the purchase was made for the purpose of assisting in the collection,
etc., it will not be held after verdict, in view of Section 72, L. O. L.,
that plaintiff's reply, denying the allegations of the answer, was in-
sufficient to show that plaintiff was a holder in due course, the issue
of innocent purchaser being tried without objection.

[As to when a general verdict cures defects in pleading, see
note in 1 **Am. Dec.** 210.]

---

*Authorities discussing the question as to when a negotiable instru-
ment is deemed payable to the order of a fictitious person within the
rule which regards such an instrument as payable to bearer are col-
lated in 22 **L. R. A.** (**N. S.**) 499; 3 **B. R. C.** 761.        REPORTER.

Bills and Notes—Holder in Due Course—Instructions.

2.   Instructions *held* sufficient to present the issue whether plaintiff was a holder in due course as against defendant's contention that plaintiff's title to the note was defective, and hence that he was not a *bona fide* purchaser within Sections 5885, 5889–5892, L. O. L.

Bills and Notes—"Fictitious Person."

3.   Where a note for stock was made payable to W. E. D. & Co., and was indorsed by W. E. D. in the name of W. E. D. & Co., in which name he did business it was not payable to a "fictitious person" within Section 5842, L. O. L., providing that a note is payable to bearer when it is payable to a fictitious or nonexisting person, and that fact is known to the person making it so payable, though the stock was not owned by W. E. D. & Co.

Bills and Notes—Payee of Note—Denial of Capacity.

4.   By engaging to pay to a particular person, the maker acknowledges his capacity to receive the money, and his capacity to order it to be paid to another, in view of Section 5893, L. O. L.

Appeal and Error—Absence of Showing of Error—Presumption.

5.   Where there is nothing in the record showing that there was no evidence upon which to predicate the instructions complained of, it will be presumed that such testimony was introduced.

Appeal and Error—Presumption of Error.

6.   Error will not be presumed.

Appeal and Error—Showing as to What Excluded Answer of Witness Would be.

7.   Where the record does not disclose what the answer of a witness would have been, sustaining an objection to a question will not be reviewed, though appellant had made a general offer of what he expected to show.

From Polk: HARRY H. BELT, Judge.

Action by H. Taylor Hill against John McCrow to recover the amount due on a promissory note. Verdict for plaintiff and defendant appealed. Affirmed.

Department 1.

This is an action instituted by the plaintiff against the defendant in which the former claims to be the indorsee of a promissory note signed by the latter and payable to the order of W. E. Davidson & Co., bearing date March 20, 1915, for $2,325, with interest from date at the rate of 6 per cent per annum, payable on or before one year after date. The cause was tried

to the court and jury, resulting in a verdict for the plaintiff and a consequent judgment from which defendant appeals.

The answer admits the signing of the alleged promissory note, but denies all the other allegations of the complaint. For a further defense it alleges that one L. E. Bedwell and one Lawrence Keyt conspired together to cheat and defraud defendant by representing to him that on March 20, 1915, Bedwell had for sale, at the request of the owners thereof, a block of stock of 25 shares of the Pacific States Fire Insurance Company of Portland, Oregon; that while the stock had a par value of $100 a share, its market value was $180 a share; that the company had declared and would pay in June, 1915, a dividend of 8 per cent, and had it so desired could have paid 20 per cent, and that each year thereafter it would pay an annual dividend of at least 8 per cent; that the owner of this block of stock was financially embarrassed and had to dispose of it and if he could make a sale of the whole block would sell for $155 a share; that Lawrence Keyt had arranged to get the money to purchase 10 shares of this stock if the defendant would buy the other fifteen; that the owner would accept a promissory note for $2,325, payable to his order and signed by defendant for the 15 shares, and as soon as the note was received would assign, transfer and forward the stock to the defendant; that Bedwell and Keyt would forward the note to the owner; that all these representations were false and were knowingly made by Bedwell and Keyt to cheat and defraud the defendant and to gain the possession of the alleged promissory note; that defendant believed these representations to be true and on March 20, 1915, signed his name to the note and permitted the above-named men

to gain possession of it; that when he signed it he intended to make it payable to the owner of the stock and to no one else; that neither the whole nor any part of the 15 shares of stock was ever delivered to defendant; that no W. E. Davidson & Co. was, on March 20, 1915, or at any time, the owner of the block of stock mentioned, or any part thereof.

The reply put in issue the affirmative matter of the answer except that the note was signed by defendant.

Plaintiff offered to return the 10 shares of stock which had been delivered to him and refused to accept the other five shares tendered to him by Bedwell. The evidence tended to show that the shares of stock were worth about their face value.      AFFIRMED.

For appellant there was a brief over the names of *Mr. Samuel T. Richardson* and *Mr. W. E. Richardson,* with an oral argument by *Mr. Samuel T. Richardson.*

For respondent there was a brief and an oral argument by *Mr. Oscar Hayter.*

BEAN, J.—It is submitted by defendant that the following questions are raised by the pleadings and proof, namely:

"Were the representations made to and believed and acted upon by defendant as alleged in the answer? Was the W. E. Davidson & Co., that made the indorsement, the payee that defendant intended to make the alleged promissory note payable to? If there was no W. E. Davidson & Co., that was the owner of any of said block of stock, and the defendant only intended to deal with the owner of the block of stock, could the plaintiff, or anyone, for that matter, acquire any title to said alleged promissory note either by indorsement or otherwise?"

The court stated the issues and charged the jury quite fully as to the law of misrepresentation and fraud, and as to the defectiveness of the title of those from whom the plaintiff claimed to have purchased the note, as specified under Section 5888, L. O. L. which provides as follows:

"The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith or under such circumstances as amount to fraud."

1. It is the position of defendant that the plaintiff did not plead in his reply facts showing that he was a holder in due course so as to have that question submitted to the jury. A copy of the note is set out in plaintiff's primary pleading. The instrument appears to be complete and regular upon its face. Plaintiff alleges that on April 13, 1915, before the note was due, "W. E. Davidson & Co. for a valuable consideration duly sold, indorsed and delivered the said promissory note to the plaintiff." Defendant denies this and alleges in his answer:

"That the plaintiff in this action on or about March 20, 1915, and prior to his alleged purchase of said alleged promissory note had notice and knowledge of all the matters alleged in this answer, and that plaintiff's alleged purchase of said alleged promissory note set forth in plaintiff's complaint was and is made for the purpose of assisting and aiding the said L. E. Bedwell and Lawrence Keyt in the collection and enforcing of the alleged promissory note set forth in plaintiff's complaint and for no other purpose."

2. This is denied by the relpy. We think the issues in respect to this point advanced the case to the proof and are sufficient after verdict. Although defendant averred that plaintiff had notice of the facts upon which he relied as constituting a defective title to the note, this being denied by the plaintiff raised the issue which was tried out without objection as to the form of raising the same: Section 72, L. O. L.; *Fisk* v. *Henarie,* 13 Or. 156 (9 Pac. 322); *Ready* v. *Schmith,* 52 Or. 196 (95 Pac. 817); *Rumble* v. *Cummings,* 52 Or. 203 (95 Pac. 1111); *Weishaar* v. *Pendleton,* 73 Or. 190 (144 Pac. 401). Section 5885, L. O. L., declares who is a holder in due course as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions: (1) that it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Section 5892 reads thus:

"Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he, or some person under whom he claims, acquired the title as a holder in due course; but the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

It is enacted by Section 5889:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must

have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith'': See 3 R. C. L., p. 1066, § 271.

Section 5890 defines the rights of a holder in due course thus:

''A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon.''

Section 5891 provides that:

''In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable; but a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter.''

It being shown that the plaintiff was the holder of the note in question, the court charged the jury in part that it is a presumption of law that the plaintiff is a holder in due course and defined such holder according to Section 5885, instructing as follows:

''Under the issues made in this case the title of the person who negotiated the note would be defective if he obtained the instrument or the signature of the maker thereto by fraud or other unlawful means'';
and also:

''If it has been shown by the evidence in this case that the title of the person who negotiated the instrument was defective, the burden is on the holder to prove that he acquired the title as a holder in due course.''

88 Or.—20

The court also instructed the jury as to what constituted a notice of an infirmity in an instrument in accordance with Section 5889, L. O. L., and charged as follows:

"If you find that the plaintiff is a holder in due course, within the meaning of the law as I have given it to you, then I instruct you that he holds the note sued on free from any defect of title of prior parties and free from defenses available to the defendant as against any other parties to the instrument, and that the plaintiff may enforce payment of the instrument against the defendant for the amount thereof."

The instructions as to the plaintiff being a purchaser of the note in good faith were based upon the provision that if "the evidence shows that said note was assigned to him in good faith for a valuable consideration before the maturity of the note" the jury could so find. The charge was in accordance with the sections of the Code above mentioned.

3. The main contentions on behalf of defendant in regard to the charge to the jury to which exceptions were saved are that the issues made by the pleadings did not warrant the submission of the question of whether the plaintiff was a holder in due course of the note in suit; that the proof showed that the note was given to W. E. Davidson & Co., a fictitious person; and that it did not appear that defendant knew that such name was that of a fictitious or nonexisting person, but that the contrary was shown. The basis for this claim is that it was intended by Mr. McCrow, the maker of the note, to make the same payable to W. E. Davidson & Co., who was the owner of 15 shares of stock in the Pacific States Fire Insurance Company of Portland, Oregon, which shares it was proposed to sell to defendant; that as W. E. Davidson & Co., the indorser of

the note to plaintiff, did not at that time own any such shares of stock, therefore W. E. Davidson & Co. was not the person defendant intended to make the note payable to; that the title to the instrument could not be obtained by plaintiff or anyone; and that the note was not a valid one even in the hands of a holder in due course. Section 5842, L. O. L., declares in part:

"The instrument is payable to bearer * * (3) when it is payable to the order of a fictitious or nonexisting person, and such fact was known to the person making it so payable. * * "

The court declined to instruct as to the law concerning a fictitious person, for the reason that W. E. Davidson appeared as a witness and testified that he indorsed the note in the name of W. E. Davidson & Co. in which he did business. As there was no contradiction of that evidence the court held that the law applicable to a fictitious person was not pertinent to the case. The trial court was correct in this conclusion. The fact that W. E. Davidson & Co. did not own stock in the Pacific States Fire Insurance Company was a circumstance to be taken into consideration in the matter of the alleged false representations; but such fact would not constitute W. E. Davidson & Co. a fictitious or nonexisting person. If A executes a negotiable promissory note to his neighbor B in payment for a band of cattle agreed to be sold to A which A is led to believe B owns, and if it should be found that in fact B did not own the cattle, that would not make B a fictitious or nonexisting person. It does not appear that the note in question was intended to be given to a fictitious person. The nonownership of the block of stock by W. E. Davidson & Co. was a circumstance in regard to which defendant had the right to and did introduce evidence as bearing upon

the question of the defectiveness of the title to the note, but it did not involve the law as to a fictitious or nonexisting person. There was no error in the court's so ruling.

4. By executing a promissory note, the maker engages to pay the amount therein named to the payee or order, if it be payable to a particular person or order. By the very act of engaging to pay to a particular payee he acknowledges his capacity to receive the money; and also his capacity to order it to be paid to another: Section 5893, L. O. L.

5, 6. Objection and exception to the instruction given to the jury is also predicated upon a want of evidence tending to show that defendant was a *bona fide* purchaser of the note for value. All the testimony is not contained in the record. What is disclosed by the bill of exceptions, in the light of the oral arguments of counsel, indicates that the question of the good faith of the plaintiff in purchasing the note was fully contested, and that what was paid therefor and all the circumstances relating thereto were explained to the jury. Plaintiff appeared as a witness in the case, but it is not shown that his evidence in full is contained in the bill of exceptions. In the absence of a showing in the record that there was no evidence upon which to predicate the instructions complained of it must be presumed that such testimony was introduced. Error will not be presumed.

7. Upon the trial Garnet McCrow, son of defendant, appeared as a witness. He was asked if he had a conversation with Mr. Keyt after the time of the execution of the note, and he answered in the affirmative, stating that he thought it was on April 12, 1915, at his home. To the question: "State to the court now what the conversation was," counsel for plaintiff ob-

jected as incompetent, immaterial and irrelevant and a matter after the transaction was closed. Thereupon counsel for defendant stated:

"If the court please: It is like this, they are claiming a W. E. Davidson & Co. was the owner of this note, and Mr. Keyt was trying to arrange a disposal of that note to Mr. McCrow. That is what we wish to show. * * This, of course, occurred the day before Hill claims to have got the note."

The court sustained the objection, to which an exception was saved. The record does not disclose what the answer of the witness would have been had he answered. The offer is a general statement of the fact that it was expected to show, but it does not appear whether the evidence of the witness would prove such fact or not: See *Columbia Realty Investment Co.* v. *Alameda Land Co.*, 87 Or. 277 (168 Pac. 64, 440). We cannot say from the record that there was any material evidence excluded or that there was any prejudicial error.

The other assignments of error are based upon the request of counsel for the defendant to give instructions appropriate to defendant's position that W. E. Davidson & Co. was a fictitious person which has already been referred to. For the reasons suggested the requests, which were not covered in substance by the charge to the jury, were properly refused. The principal question in the case was one of fact for the jury. It is not claimed that as a matter of law the charge to the jury was incorrect.

Finding no error in the record the judgment of the lower court is affirmed.

AFFIRMED.   REHEARING DENIED.

MR. JUSTICE MOORE, MR. JUSTICE BENSON and MR. JUSTICE McCAMANT concur.