Argued November ·27, 1918, affirmed February 4, rehearing granted
    March 11, reargued April 2, former opinion adhered to and judg-
    ment affirmed April 29, 1919.

# ASHMUN v. NICHOLS.*

(178 Pac. 234; 180 Pac. 510.)

**Landlord and Tenant—Injuries to Tenant—Sufficiency of Evidence.**

1. In an action by a tenant injured by giving way of step in
stairway to basement, evidence *held* to sustain a finding of negligence
of the landlord, although he had employed a carpenter and the lum-
ber had been put upon the premises to repair the steps.

**Trial—Reception of Evidence—Offer of Proof.**

2. There was no error in sustaining an objection to a question,
where there was no showing or offer as to what would have been the
proof if the witness had been permitted to testify.

[As to defective and dangerous premises showing liability of
lessor for, see note in 66 Am. St. Rep. 785.]

ON REHEARING.

**Landlord and Tenant—Failure of Landlord to Repair After Notice—
Injury to Tenant—Landlord's Liability.**

3. Where a landlord agreed to keep his premises in repair, the
law fastened upon him such duty, and where he violated that duty
after notice of a dangerous condition of steps he is liable in dam-
ages for the tenant's personal injuries caused thereby, whether the
injuries were directly contemplated in the contract and the action
was purely contractual, or whether it was in tort for the landlord's
negligence or whether it partakes of a double nature under the Code,
depending upon both tort and contract.

**Landlord and Tenant—Agreement to Repair—Evidence.**

4. In an action by a tenant against a landlord for personal in-
juries resulting from a defect in steps of which the landlord had
notice, evidence *held* sufficient to support a jury's finding of an agree-
ment by which the landlord was to repair whenever necessary to
make the building safely habitable.

**Landlord and Tenant—Landlord's Agreement to Repair—Considera-
tion.**

5. Evidence *held* sufficient to show that the agreement of the land-
lord to make repairs necessary to make the building safely habit-

---

*Authorities discussing the question of liability of landlord for
injury to tenant from defects in premises are collated in notes in
34 L. R. A. 824; 34 L. R. A. (N. S.) 798; 48 L. R. A. (N. S.) 917 and
L. R. A. 1916D, 1224.

On right of tenant to recover for personal injuries received through
landlord's breach of contract to repair, see notes in 11 L. R. A. (N. S.)
504; 34 L. R. A. (N. S.) 804; 48 L. R. A. (N. S.) 919 and L. R. A.
1916D, 1227.     ‹     REPORTER.

able, referred back to the original contract, and was not without consideration.

**Landlord and Tenant—Personal Injuries—Defective Steps—Notice— Contributory Negligence—Question for the Jury.**

6.  In action by a tenant against a landlord for personal injuries resulting from dangerous condition of steps, of which the landlord's agent had been notified, and which steps he had promised to immediately repair, requesting the tenant to use the steps with care, the question of contributory negligence was one for the jury.

**Negligence—Injuries from Plaintiff's Subsequent Acts—Pleading and Proof.**

7.  If one injured by negligence of another attempts to recover for suffering resulting from his own subsequent act rather than the original accident and presents evidence of his subsequent suffering, defendant, without any pleading and as a matter of negation, may prove that part or all of the suffering resulted from the second injury.

**Trial—Exclusion of Evidence—Necessity of Statements as to What Witness Would Answer.**

8.  Before a party can take advantage of an error in excluding evidence, he must state to the court what he expects the answer of the witness will be, so that the court may know whether the answer excluded would have been favorable to the party offering it.

**Trial—Instructions—Refusal of Instructions on Matters Covered by Others.**

9.  It is not error to refuse a requested instruction upon matters sufficiently covered by the general charge.

From Multnomah: WILLIAM L. BRADSHAW, Judge.

Department 2.

Plaintiff alleges that the defendant was the owner of Lot 1, Block 182, in the City of Portland; that in December, 1913, she made an oral lease thereof and of the dwelling-house thereon, at a monthly rental of $25; that the defendant promised and agreed to make certain repairs on the premises and to keep them in good condition; that on October 9, 1916, while in possession of the premises under such verbal lease, plaintiff undertook to go down the stairway leading from the first floor of the building into the basement, for the purpose of obtaining fuel; that while she was carefully and prudently going along and down said stairway,

she stepped upon the fourth tread from the bottom and it broke, gave way and injured the plaintiff; that the steps, braces and other material of which the stairway was constructed, and which were covered and hidden from the plaintiff by the steps, were old, rotten, worn out, defective and in a dangerous condition; that the defendant knew or with the exercise of reasonable care ought to have known of such defective and dangerous condition, yet carelessly and negligently failed to repair the same.

It is further averred that prior to the injury the plaintiff had complained to the defendant of the condition of the stairway and insisted that it be repaired; that the defendant had agreed to make the necessary repairs; that plaintiff relied upon such promise and was using the stairway in a careful and prudent manner at the time of the injury; that the defendant carelessly and negligently permitted the stairway to remain in a defective and dangerous condition after he had been notified thereof by the plaintiff and after he had promised to repair the same; that he violated his promise to fix and repair; that the plaintiff without any fault or negligence on her part and while rightfully upon the premises as tenant of the defendant, by reason of such defects in the stairway was violently precipitated by the falling and breaking of the said step, as the result of which she sustained certain injuries, and damages in the sum of $10,000.

The defendant filed a general demurrer to the complaint, which after argument was overruled, and then made answer, admitting that the plaintiff was his tenant from December, 1913, until after the month of October, 1916, but denying every other allegation of the complaint. As a further and separate answer he alleges that about the month of December, 1913, the de-

fendant let to the plaintiff as a tenant from month to month, without any agreement as to time and without any written lease, the premises described in the complaint; that in October, 1916, while the plaintiff was in possession thereof, "she negligently and without due care or caution attempted to go down the steps leading from the first floor of said premises to the basement thereon, plaintiff well knowing that said steps were unsafe and out of repair, which, by reason thereof, broke, gave way and caused plaintiff to fall, and plaintiff was thereby slightly injured"; and that "said negligent acts and omissions of plaintiff contributed to and caused her said accident and injury."

A reply was filed. Trial was had and the jury returned a verdict in favor of the plaintiff in the sum of $1,200. Judgment was entered thereupon, from which the defendant prosecutes this appeal, claiming that the court should have sustained his motion for nonsuit and for a directed verdict and that there was error in its ruling sustaining objections to the introduction of certain testimony in mitigation of damages. On motion of the defendant, the plaintiff declared in open court that her cause of action was founded upon tort.        AFFIRMED. ADHERED TO ON REHEARING.

For appellant there was a brief over the name of *Messrs. Flegel, Reynolds & Flegel,* with an oral argument by *Mr. A. F. Flegel.*

For respondent there was a brief over the names of *Mr. W. B. Shively* and *Mr. J. G. Arnold,* with an oral argument by *Mr. Shively.*

JOHNS, J.—It appears that at the time of the leasing the building in question was very old, out of repair and in a dilapidated condition; that it was only a mat-

ter of a short time until it would have to be torn down; that it was necessary that certain improvements should be made before it would be a fit or suitable place for habitation; that certain repairs were then made and during the three-year period of the leasing the landlord continued to make minor and inexpensive repairs, and that the agreed rental was paid.

There was an old stairway leading to the basement in which the plaintiff kept her wood and vegetables. She claims that it was necessary for her to use this stairway. A short time before the accident, while plaintiff was going down this stairway the bottom step broke, by reason of which she fell but was not then injured. The complaint alleges that she then notified the defendant, through his agent, of the condition of the stairway and that he promised and agreed to make the necessary repairs immediately; that relying upon such promises she continued to use the stairway, taking reasonable care and precaution; that in fact the stairway was old, worn out and defective; that its condition was latent and concealed but should have been known and would have been known to the defendant with the exercise of reasonable care and diligence; that after receipt of the notice the defendant sent a carpenter to the premises for the purpose of putting the stairway in good condition so that it could be used safely for the purposes for which it was intended; that the carpenter made the required measurements and an estimate of the necessary material; that the lumber was then brought and placed upon the premises for the purpose of reconstructing the stairway. It appears that the lumber remained unused for about five days; that relying upon the promise of the defendant to repair, and from necessity, the plaintiff continued to use the stairway; that about the fifth day after the ma-

terial was on the ground, and without any fault or negligence on her part, while going down the stairway, the fourth step from the bottom broke, as a result of which she was violently thrown to the basement floor and sustained the injuries of which she complains.

The defendant contends that the plaintiff was injured as a result of her own carelessness and negligence, and that relying upon a tort she is not entitled to recover. The plaintiff testified:

"I told him it would have to be kept in repair or I could not live there, and he said they would keep it in repair."

Mr. De Graff, agent for the defendant, when asked about the agreement to make repairs, replied:

"Not that I remember of, except as I said before, that we would not make any repairs to it unless it was absolutely necessary to make it habitable."

The fact remains that the plaintiff used and occupied the building as a residence; that the defendant took and accepted her monthly rental; that it was necessary to use the stairway in going to and from the basement; that the plaintiff testifies that she notified the defendant of the condition of the stairway prior to the accident and that he promised to make the necessary repairs; that he actually sent a carpenter and bought the material for that purpose; that the lumber was purchased and placed upon the ground at least five days before the accident.

Among others, the court gave the following instructions:

"The question of what is a reasonable time is for the jury to determine. * *

"Defendant would have a reasonable time, after knowing or being notified of the repairs being necessary, in which to have made them, before he could

be held responsible for injuries resulting therefrom. * *

"If you find from the evidence the accident complained of was in any degree owing to the want of due care and caution on the part of the plaintiff directly contributing to said accident, then your verdict must be for the defendant. * *

"If you find from the evidence that the plaintiff knew the steps were unsafe and out of repair, but did not know that the particular step which broke was out of repair, then it is for you to determine from the evidence whether or not the plaintiff in venturing on the step which broke, without investigating its condition, was exercising due and ordinary care for her own safety. The plaintiff is not entitled, knowing or having good reason to suppose she was incurring danger in so doing, to go upon the steps, relying on the defendant being responsible for the steps being safe; but must act in a reasonable and prudent manner.

"You cannot find a verdict for plaintiff in any sum unless you determine, first, that there was a contract between plaintiff and defendant, or defendant's agent, that defendant would make the repairs on the stairway. Second, that the defendant or his agent, the Portland Trust Company, after being informed and knowing the existence of the defect in the stairway, and promising to repair the same, failed to use that degree of diligence which a man of ordinary prudence would have used under like circumstances to repair the defect. Three, that the defect of which defendant or his agent was so notified or informed and so neglected to repair, was the cause of plaintiff's injury."

1. Under such instructions the jury found for the plaintiff and there is sufficient evidence to sustain the verdict.

We think the law of this case is laid down by the Supreme Court of Washington in *Mesher* v. *Osborne*, 75 Wash. 439 (134 Pac. 1092, 48 L. R. A. (N. S.) 917), where it is held:

"In some of the earlier cases holding that an action of tort did not arise on a breach of the covenant in the case presented, the general expressions used would include the proposition that no such action could arise. But it is believed that, restricting those cases to the issue presented, there is nothing to exclude general harmony on the proposition where there is a covenant by the landlord to keep the premises in safe and tenantable condition, and the landlord has knowledge or notice of the existence of such defects as render the use of the property in the manner contemplated by the lease dangerous to the tenant, and the tenant, his guests or family, suffer personal injury therefrom after a reasonable time for making the premises safe, since such notice or knowledge, in the absence of contributory negligence, the landlord is liable to an action of tort therefor."

2. The defendant called Mayme Kube, the head nurse of the hospital where the plaintiff was receiving medical care after her injuries, as a witness and asked her this question:

"What condition is indicated by the chart, or what do you know from personal memory of the facts, as to her obeying directions, or as to her being refractory?"

Upon an objection to this question, counsel for defendant stated:

"Our object is to explain as far as possible to what extent the condition we find is due to the injury and to what extent it is due to other things. It would all bear on the good faith of the patient, and explain the results."

The court sustained the objection, upon the ground that such matters had not been pleaded as an affirmative defense. The defendant did not offer the chart in evidence and did not offer to produce any evidence as to who kept the chart or made the entries thereon, whether the chart was authentic or the purposes for

which it was kept. In *First Nat. Bank.* v. *Oregon Paper Co.*, 42 Or. 398 (71 Pac. 144, 971), this court held:

"If the appellants were not allowed to prove their claims, they should have called witnesses, and stated to the court the testimony which it was expected would be elicited from them."

After citing the above case with approval, the opinion in *Columbia Realty Investment Co.* v. *Alameda Land Co.*, 87 Or. 277, 291 (168 Pac. 64, 68), lays down this rule:

"We think the better practice is to call the witnesses relied on and ask appropriate questions. If objections are sustained to these questions the time is ripe for an offer of proof."

Assuming that the defendant could make this defense under general denial, there was no showing or offer as to what would have been the proof if the witnesses had been permitted to testify, and for such reason there was no error in sustaining the objection.

Every element of defense was fully covered by proper instructions and the vital question of fact was: What would be a reasonable time within which the defects in the stairway should have been repaired, after the defendant received notice of such defects? The jury found for the plaintiff. The judgment is affirmed. AFFIRMED. ADHERED TO ON REHEARING.

McBRIDE, C. J., and BEAN, J., concur.

OLSON, J., took no part in the consideration of this case, his term having expired.

Former opinion adhered to and judgment affirmed April 29, 1919.

## ON REHEARING.

(180 Pac. 510.)

In Banc.

This cause of action arose out of injuries received by the plaintiff, caused by the giving way of the basement steps in a house which she was renting from the defendant, precipitating her to the basement floor, and wounding her more or less seriously upon projecting nails.

The case has been once heard in Department No. 2, and now comes up for rehearing before the full court.

FORMER OPINION ADHERED TO.

On rehearing, for appellant there was a brief over the name of *Messrs. Flegel, Reynolds & Flegel,* with an oral argument by *Mr. John W. Reynolds.*

For respondent there was a brief over the names of *Mr. W. B. Shively* and *Mr. J. G. Arnold,* with an oral argument by *Mr. Shively.*

BENNETT, J.—We are met at the threshold of the case by the urgent claim of defendant, that this is an action in tort, and that the tenant cannot recover against the landlord in such an action, or indeed at all, for personal injuries caused by a failure to repair, even where there is an agreement on the part of the landlord to repair, but that the only remedy of such tenant, is directly upon the contract, for the breach of the same, in which action (as is claimed) such a personal injury would be too remote and not within the contemplation of the parties.

Upon this question of whether a tenant can recover against the landlord for a personal injury under such circumstances, the authorities are very much divided. At common law, and even under the Codes, a great deal of labor has been expended, and much learning applied in the attempt to exactly and accurately define a tort, and to distinguish it from a mere breach of contract. The real meaning of "tort" has been found so elusive and nebulous, that while many courts and text-writers have attempted to fix exactly its scope and limitations, and its relations to contract rights, yet none of their definitions and limitations have been found sufficiently accurate to be generally accepted: 38 Cyc. 415.

In *Hayes* v. *Mutual Life Ins. Co.*, 125 Ill. 626 (18 N. E. 322, 1 L. R. A. 303), a tortious act is defined as,

"The commission or omission of an act by one, without right, whereby another receives some injury."

It is sometimes defined as synonymous with "private wrong," "private injury" or "civil wrong": *Rhobidas* v. *Concord*, 70 N. H. 90 (47 Atl. 82, 185 Am. St. Rep. 604, 51 L. R. A. 381). Bishop, in his work on Noncontract Law, after defining it as a civil wrong inflicted otherwise than by a mere breach of contract, says:

"To be more nicely accurate, a tort is one's disturbance of another in rights which the law has created, either in the absence of contract or in consequence of a relation which a contract has established between the parties."

In *Rich* v. *New York Cent. etc. Ry. Co.*, 87 N. Y. 382, Judge FINCH says:

"We have been unable to find any accurate and perfect definition of a tort. Between actions clearly *ex delicto* and those as clearly *ex contractu* there exists

what has been termed a border land, where the lines of distinction are shadowy and obscure, and the tort and the contract so approach each other and become so nearly coincident as to make their practical separation somewhat difficult."

Perhaps under our Code systems, we should not attempt to place too much stress upon a somewhat arbitrary and ill-defined distinction between torts and contracts. It is a theory of the Code procedure that a party shall have full redress for all legal wrong, whether the wrong results from a breach of contract or from a breach of more general law. It is obvious that many times, and in many cases the injury will depend partly upon contract and partly upon a tort or wrong. In an action against a carrier of passengers the right of the injured passenger depends entirely upon his contract to be carried safely, and he could not recover without such contract either expressed or implied, and yet superimposed upon the contract is the wrongful and negligent breach, causing an injury to his person, which was not directly contemplated by the contract, and for which the contract provides no measure of damages. To say that the passenger must separate the two, and depend wholly upon the negligent wrong, on the one hand, or the mere breach of contract alone on the other, would be to deprive him effectually of a complete remedy.

3. In a case like this we think that when a landlord agrees to keep his premises in repair, the law fastens upon him a *duty* to keep that contract, and if he violates that duty, after notice of the dangerous condition, he ought in principle to be liable for whatever injuries the tenant naturally and necessarily receives from such breach of duty. If the only injury is one directly contemplated in the contract, as the decreased value of the use of the premises, the action of the tenant

would be purely upon the contract. But if the negligence of the landlord resulted, necessarily and naturally, in some further injury to his person or property, he may bring an action, like the one at bar, and it is of little importance whether it is called technically an action on contract or an action upon the tort, or whether it partakes of a double nature, depending upon both tort and contract.

It is true there are many authorities which can be cited against this view. A great many of these are presented in the very exhaustive brief of the learned attorneys for appellant. It may be that in mere numbers, the burden of authority is that way. But the law upon this point is in a state of change, and we think the better rule, and that declared by the majority of the later cases, sustains a recovery by a tenant against the landlord for personal injuries caused by a failure to repair where the landlord has directly promised and agreed to make the necessary repairs, and had notice of the dangerous condition.

The authorities are so numerous on each side that it would be unnecessary labor to attempt to segregate and compare them.

Among the very late cases supporting the rule as we have stated it are those of *Mesher* v. *Osborne,* 75 Wash. 439 (134 Pac. 1092, 48 L. R. A. (N. S.) 917), and *Ehinger* v. *Bahl,* 208 Pa. St. 250 (57 Atl. 572).

It is urged on rehearing that the Washington case, *supra,* does not really declare this doctrine, but only quotes the same from the work of Shearman & Redfield on Negligence, but we think the court intended to make that quotation a part of its opinion. The court had already said:

"Where there is a general duty, even though it arises from the relation created by, or from the terms of the contract, and that duty is violated, either by

negligent performance or negligent nonperformance, a landlord may be held as for a tort. Between landlord and tenant, as in other relations, there is always the general duty to so use one's own as not to injure another."

And then the court, after reviewing the authorities, quotes, as it seems to us, with complete and expressed approval, the language from Shearman & Redfield, as follows:

"A carefully compiled and discriminating text, after noting the hopeless conflict of the authorities and the hairsplitting distinctions indulged by some of the courts, uses the following language: ' * * The law on the subject is in a state of transition. In some of the earlier cases holding that an action of tort did not arise on a breach of the covenant in the case presented, the general expressions used would include the proposition that no such action could arise. But it is believed that, restricting those cases to the issue presented, there is nothing to exclude general harmony on the proposition where there is a covenant by the landlord to keep the premises in safe and tenantable condition, and the landlord has knowledge or notice of the existence of such defects as renders the use of the property in the manner contemplated by the lease dangerous to the tenant, and the tenant, his guests or family, suffer personal injury therefrom after a reasonable time for making the premises safe, since such notice or knowledge, in the absence of contributory negligence, the landlord is liable in an action of tort therefor. In those jurisdictions where damages for personal injuries are held recoverable against the landlord for injuries caused by the want of repairs he had agreed to make, and of the necessity of which he had been notified, it is said that the nature of the covenant is such as naturally to create a reasonable anticipation that the neglect to perform it will probably be the cause of personal injuries being inflicted on the tenant, his guests, family, and servants; that the covenant gives rise to a corresponding duty either to exercise such supervision as may be necessary, or to

act with requisite promptness on notice, as the case may require; and that an action of tort is maintainable for the injury consequent on the neglect to perform it, the covenant being set up as a matter of inducement. * * , "

The Pennsylvania case, *Ehinger* v. *Bahl,* 208 Pa. St. 250 (57 Atl. 572), is almost exactly on all-fours with this case. There the plaintiff had discovered a crack in the building he was occupying, and had notified the defendant, who was the owner of the building, and who promised to have it fixed right away. She did not do so, but put off the repairing and was notified again, and again promised to take care of it but did not do so, and the building fell and caused a serious damage to plaintiff's goods. The plaintiff was nonsuited in the court below, but the decision was reversed in the appellate court in a careful and well-considered opinion.

4. In this case we think it clearly appears that there was evidence from which the jury might find that there was a general contract, at the time plaintiff went into the building, that the defendant would make such repairs from time to time as were necessary to make the building habitable, and that in pursuance of that arrangement plaintiff, when the steps became unsafe, went to the defendant and to his agent, and notified him of the condition the steps were in. The defendant's agent came and looked at the steps. Amber Ashmun, daughter of the plaintiff, testified:

"Well, he looked at the steps and he said he would have them fixed immediately."

Mr. De Graff, agent of the defendant, practically admits this, saying:

"When we were at the bottom (of the steps) I told her I would *order them fixed right away,* and that she should be careful in the meantime."

Defendant himself, testified:

"Mr. De Graff had his orders to repair everything that was a necessity."

Under this evidence the jury might well find an agreement to repair whenever necessary to make the building safely habitable.

5. However, it is urged that this agreement was without consideration, but we do not think this contention can be sustained.

The plaintiff, testifying in regard to the original contract to make necessary repairs, says:

"I told him he would have to have the house kept in repair or *I could not live there,* and he said they would keep it in repair."

And again in cross-examination:

"Q. What was necessary at that time to be done, they were willing to do to keep you as a tenant?

"A. Yes, they were willing to keep it in repair."

It appears from the evidence that the defendant was receiving $25 per month for the use of the premises, and we think the jury could infer, that the agreement to fix these particular steps, referred back to the original contract and had reference thereto, and that the continued occupation by the tenant, and the payment of the rent, was a sufficient consideration.

Upon this question the case of *Ehinger* v. *Bahl,* 208 Pa. St. 280 (57 Atl. 572), from the Pennsylvania Supreme Court, already cited, is directly in point, in which the court said:

"It is argued there was no valid contract to repair. We think there was a valid contract, and a good consideration for it; he was induced to remain because she promised to make substantial, possibly extensive repairs; she secured a desirable tenant who would have abandoned the property that day if she had not made .

the promise; the promise was not to be performed in the indefinite future, but the same day it was made. It is argued there was no promise which bound the tenant. We think there is a reasonable inference of a promise which the jury might have drawn, that he was to remain and pay rent for at least a month longer; for, it should be noted, he was not bound to stay a day at the peril of himself, family and goods, and she promised to relieve him of the peril that very day. The mutual promises, if as alleged, constituted a sufficient consideration; but resting wholly in parol what they were and what the parties meant was for the jury.''

6. The question of contributory negligence was clearly one for the jury. When plaintiff found the steps were in a dangerous condition she was in the actual occupation of the premises with her family and household goods. She had the choice of remaining until the repairs were made, or attempting to remove to some other place. To do the latter she would first have to find a place to which she could remove. She had the landlord's general promise to repair. She notified him at once about the dangerous condition of the steps, and he promised to repair them *immediately*. Under these circumstances, according to her testimony, she remained on the premises, using the steps carefully. We think it was clearly a question for the jury as to whether she was negligent in so doing, and as to whether the defendant was negligent in delaying to repair.

The case was analogous to the case of a servant who, finding a dangerous condition, notifies the master of that dangerous condition, and upon the master's promise, returns to his work, depending upon the master to repair. In such cases it has been generally held that contributory negligence is a question for the jury.

7. There seems to be only one other serious question present in the case at bar, namely; whether or not there was reversible error in the ruling of the court excluding the testimony of Miss Mayme Kube. The record of the case in that matter was as follows: The witness, having qualified herself as being a nurse at the hospital, was asked:

"Q. What condition is indicated by the chart, or what do you know from personal memory of the facts, as to her obeying directions, or as to her being refractory?

"A. Well, she would remove the dressings from her legs when the nurse asked her not to—

"Mr. Arnold (Interrupting): Just a minute. I do not understand that there is any carelessness or negligent treatment pleaded in this action at all, and I don't think that would be competent under the pleadings in the case. I understand the purpose is to show she was careless and negligent in treating herself?

"Mr. Reynolds: Our object is to explain, as far as possible, to what extent the condition we find is due to the injury and to what extent it is due to other things. It would all bear on the good faith of the patient, and explain the results.

"The Court: I think the rule of law is that you must plead that. Do not understand the court to say that you have not a right to show what her condition was; but if her condition was brought about by some treatment, you should state that, just the same as if you claimed her condition came from some inherent disease she had. That will be the ruling of the court. Objection sustained.

"Mr. Reynolds: I will save an exception."

We do not think it was necessary to plead, that part of the injuries for which plaintiff was complaining, was caused by the subsequent act of the plaintiff, rather than by the original accident. This was not "contributory negligence." It was simply an affirma-

tive way of showing that part of the suffering of which plaintiff had complained in her evidence, did not result from the accident at all, but from her own subsequent acts. It is apparent that if a man suffers a broken arm, by reason of the negligence of some other person, and when he is about well breaks it again, either willfully or accidentally, he cannot recover for the second injury, from the person liable for the first; and if he attempts to do so, and presents to the jury evidence of his subsequent suffering, the defendant, without any pleading and as a matter of mere negation, has a right to prove that part or all of the suffering actually or probably resulted from the second injury.

This was the conclusion reached in the opinion of Mr. Justice BENSON in *Theiler* v. *Tillamook County*, 81 Or. 277 (158 Pac. 804), where a similar question was involved, and with the reasoning of that opinion we are entirely satisfied.

8. A close question, however, arises as to whether the defendant disclosed sufficiently to the court, what the testimony, which was not admitted, would have been, and whether or not it would have been favorable to the defendant.

This court has repeatedly held that before a party can take advantage of an error of this kind, he must state to the court what he expects the answer of the witness will be. This is not only for the purpose of first advising the trial court, but it is also necessary so that this court, may know whether the answer excluded would have been favorable to the party offering it, and, therefore, would justify a reversal and new trial. For instance, in this case it might be that in the event of a reversal and new trial this same witness being called and permitted to testify, might say that she knew nothing further, or that they were about to take

92 Or.—16

the bandages off anyway and it did not make any difference in her condition.

It will be noticed the court made no order excluding the answer of the witness already given, and there was no offer to show that she could have testified to any further fact, or whether her testimony would have been favorable to the defendant.

In the case of *Hill* v. *McCrow*, 88 Or. 299 (170 Pac. 306), a question was presented almost exactly similar, and the record was much in the same condition. A witness having been asked if he had had a conversation with a certain Mr. Keyt, was asked:

"State to the court now what the conversation was.

"Counsel for plaintiff objected as incompetent, irrelevant and immaterial, and a matter after the transaction was closed."

Thereupon, counsel for defendant stated:

"If the court please, it is like this, they are claiming a W. E. Davidson & Co. was the owner of this note and Mr. Keyt was trying to arrange a disposal of that note to Mr. McCrow. That is what we wished to show. * * This, of course, occurred the day before Hill claims to have got the note."

The court sustained the objection, to which an exception was saved. Upon appeal the court said:

"The record does not disclose what the answer of the witness would have been had he answered. The offer is a general statement of the fact that it was expected to show, but it does not appear whether the evidence of the witness would prove such fact or not. We cannot say from the record that there was any material evidence excluded or that there was any prejudicial error."

To the same effect is *Kelly* v. *Highfield*, 15 Or. 277 (14 Pac. 744); *Strickler* v. *Portland Ry. L. & P. Co.*, 79

Or. 526 (144 Pac. 1193, 155 Pac. 1195), and many other Oregon cases.

It is the opinion of a majority of the court that the defendant did not come within the rule thus so frequently laid down by this court, in showing that testimony *favorable to the defendant* was actually excluded by the court.

9. The same question was sought to be raised by an instruction requested by the defendant. While the instruction asked for was not given, the court seems to have sufficiently covered the same proposition by its general charge, in which the court said:

"It is therefore necessary for the plaintiff to prove by a preponderance of the evidence that any injury or ailment from which she may be suffering, were caused by the defendant's negligence before she can recover any damages therefor, and if it should appear from the evidence that any of plaintiff's suffering may be attributed to some other cause, than the negligence of the defendant, then she is not entitled to have such particular considered in your appraisement of damages."

There being no reversible error, our former opinion is adhered to and the judgment is affirmed.

FORMER OPINION APPROVED AND JUDGMENT AFFIRMED.