Argued April 1; affirmed April 21, 1942

## BACH *v.* CHEZEM

(124 P. (2d) 710)

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*Glen R. Jack,* of Oregon City (Butler & Jack, of Oregon City, on the brief), for appellant.

*Charles W. Robison,* of Portland (Robison & Shaw, of Portland, on the brief), for respondent.

BAILEY, J.  This action was brought by Albert G. Bach, administrator of the estate of Anna Bock, deceased, against James Elie Chezem, to recover damages for the death of Anna Bock, who was fatally injured in an automobile collision caused by the negligence of the defendant.  From a judgment in favor of the plaintiff the defendant appeals.

When the case was called for trial, the defendant, by his attorney, in open court admitted that he was negligent, that ''his negligence was the proximate cause of the collision, and that the deceased died as a result of that collision.''

Only three assignments of error are set forth in the appellant's brief, one of which, as to excessiveness of the damages, was abandoned, according to our understanding, upon the oral argument.

One of the assignments of error urged here is that there was a failure to show the age of the decedent at the time of death, and that such failure ''is fatal to a claim for damages''.  The complaint alleges that the decedent was sixty-six years of age at the time of her death.  In his opening statement to the jury, counsel for the defendant said:

''This is a case in which the issue is limited.  Now, there isn't any need for me to take up your time and give an opening statement, because the evidence that we have to submit is very short.  Probably it will be gleaned from the evidence that the plaintiffs themselves put on the witness stand.  In other words, by

examination of their witnesses they will tell all that we know about the situation, and that, in brief, is simply this:

"Mrs. Bock was around sixty-six. Her estate is probated in this county. Under the sworn records of that estate the son as administrator has made an oath before Judge Latourette that there were no assets in her estate at the time of her death except this claim for damages; that she had accumulated no property up to the date of her death, and in addition to that, we know that her expectancy is around eleven or eleven and a half years, and that is the normal expectancy of the normally healthy person."

During the direct examination of Albert G. Bach, son of the decedent and administrator of her estate, the following discussion was had:

"Q. [Mr. Robison:] Now, during this time we have alleged in the complaint your mother was a woman on June the twentieth approximately sixty-six years . . . sixty-five years of age . . .

". . . And so that we will have our record clear on that, is it satisfactory to counsel that under the mortality tables it may be stipulated that the life expectancy of a person sixty-six years of age of normal health would be approximately 11.88 years?

"Mr. Jack: Well, if you tell me you have looked it up. I have never looked it up.

"Mr. Robison: Yes, I have.

"Mr. Jack: Well, then, let it go."

After the testimony was concluded, Mr. Jack, attorney for the defendant, called the attention of Mr. Robison, attorney for the plaintiff, to the fact that after checking the mortality table in Corpus Juris, "I find the expectancy of one of that age [age of Mrs. Bock] is 10.54 years. It just makes a difference of one year, but I think it should be noted in the record." To that Mr. Robison agreed. At that point one of

the jurors stated that he had with him a mortality table of a life insurance company and would be glad to furnish it to counsel, if they wanted it. Thereupon the trial judge said: ''No; counsel have agreed that 10.54 years would be her life expectancy, so we are bound by that stipulation.''

The case was then argued to the jury by counsel for the respective parties. On the following day, after the arguments were completed, the court gave, among others, the following instruction to the jury:

''It is admitted in this case that the deceased had a normal expectancy of 10.54 years. This merely means that the average person of normal health would have attained the age that Mrs. Bock attained at the time of her death, with reasonable expectancy to continue to live for 10.54 years, and interpreting the evidence as to this particular case, you are to take into consideration the evidence as to the health of the deceased, and any impairment that would in your opinion-affect her by lessening the normal expectancy or by extending the normal expectancy.''

When the court had completed its charge to the jury and asked if there were any exceptions to the instructions, counsel for the defendant made this objection:

''The court inadvertently, I think, misquoted the stipulation of counsel. The stipulation was to the effect that a person of normal health at the age of sixty-six years would have a normal expectancy of 10.54 years. There was never a stipulation as to the age of the deceased, because we have no knowledge regarding that matter.''

The court replied thereto: ''Yes, that is correct, gentlemen of the jury. Swear a bailiff.''

■ We cannot agree with the defendant's argument that the question of the decedent's age and life expectancy was left to the speculation of the jury. The

opening statement of counsel for the defendant, and the discussion of the decedent's age that ensued in the trial of the case, as above noted, must have fixed in the minds of the jurors that Mrs. Bock was approximately sixty-six years of age and that a normal person of that age had a life expectancy of 10.54 years. At no time during the trial was it suggested by counsel for the defendant that there was no evidence in the record as to Mrs. Bock's age at the time of her death. It is true, counsel did state at the conclusion of the instructions that there was no stipulation as to her age for the reason that "we have no knowledge regarding that matter." He did not, however, then question the court's statement, made during the trial of the case, that it had been agreed by counsel that Mrs. Bock's life expectancy was 10.54 years. Nor did he move for a nonsuit or for a directed verdict because of failure of proof as to the decedent's age.

The testimony of Julius Bock was to the effect that he was the widower of the decedent and that he and she had been married forty-six years. There was also the testimony of the decedent's son, Albert Bach, who stated that he was born in 1896 and that he had a brother who was born about 1902. And there was further testimony that Mrs. Bock, during the last five or six years of her life, had been very active in conducting the produce, wood and service station business that her husband, prior to his becoming incapacitated, had been operating.

All the above facts, taken in connection with the jury's returning a verdict for $2,500, would indicate that the jury must have understood that the decedent was an elderly woman, about sixty-six years of age, with life expectancy depending upon the condition of her health as shown by the evidence.

■ After the judgment had been entered on the verdict of the jury in favor of the plaintiff, the defendant filed a motion for judgment *non obstante veredicto* or, in the alternative, for a new trial, on the ground that the plaintiff had failed to prove the age of the decedent. No attempt was made by the defendant to show that the decedent's age was other than that alleged in the complaint and admitted by defendant's counsel in open court. The motion was denied, and in our opinion the circuit court did not err in so ruling.

The remaining assignment of error is based on the court's refusal to admit in evidence the hospital record of the decedent covering a ten-year period prior to her death. Laura P. Martin, called as a witness for the defendant, testified that she was "the record librarian for the medical school, University of Oregon medical school, hospital and clinics," and that among those Multnomah county hospital was included. She produced and identified records of Multnomah county hospital which, she testified, related to the care of Mrs. Bock in that institution between December 30, 1930, and sometime in April, 1940. She testified that she was not present at the time the records were made, but that they were the original entries and were made in the regular course of business. They contained, she further testified, the opinions of doctors and nurses.

Upon the sustaining of an objection to a question asked this witness, counsel for the defendant stated:

"If the court please, without recalling the witness yet for a minute, I think counsel and I have agreed that the record referred to as 'Defendant's Exhibit 2' for identification shows many other things. The following might be stipulated, as showing that the deceased, Anna Bock, was treated by the Multnomah county hospital for diabetes intermittently from 12-30-30 to 4-20-40; that she was admitted for a Mayo

hysterectomy, some operation, October 8th, 1936, and was operated on and discharged November 18th, 1936, that is the same visitation, Multnomah county hospital; that she applied for admission on June 7th, 1939, which is the last application for admission, and was admitted for some toe difficulty and discharged June 22nd, 1939. Is it so stipulated?

"Mr. Shaw: Just a moment. If the court please, we will stipulate as to the diabetic condition, as to the Mayo vaginal operation, and as to the operation for her toe.

"The court: All right."

In addition to this stipulation, there was introduced in evidence by the defendant, with the consent of counsel for the plaintiff, an application for admission to Multnomah county hospital signed by the decedent and dated June 7, 1939. This, however, contains no information as to Mrs. Bock's ailment on that date.

The hospital records that were offered in evidence are not before us, nor was any offer of proof made by the defendant as to the contents of those records, otherwise than as above stated.

■ Because of the state of the record in this case, we are unable to determine whether the trial court erred in excluding the entries in the hospital books offered in evidence. We do know, from the testimony of Miss Martin, that those entries included opinions of attending doctors and nurses, but we do not know the nature of such opinions. Nor do we know what the other entries covered. We are therefore unable to determine whether the defendant was prejudiced by the ruling of the court or, what is more, whether the court erred at all in excluding the hospital records: *Ashmun v. Nichols*, 92 Or. 223, 231, 242, 178 P. 234, 180 P. 510; *Riley v. Good*, 142 Or. 155, 158, 18 P. (2d) 222.

The judgment appealed from is affirmed.