Argued September 28; affirmed October 18, 1949

# O'BRIEN *v.* DUNIGAN

210 P. 2d 567

*Roy R. Hewitt,* of Salem, argued the cause and filed a brief for appellant.

*Asa Lewelling,* of Salem, argued the cause and filed a brief for respondents.

Before Lusk, Chief Justice, and Brand, Rossman, Bailey and Hay, Justices.

## ROSSMAN, J.

This is an appeal by the plaintiff from a judgment in favor of the three defendants. The action which terminated in the attacked judgment was predicated upon averments that an automobile operated by the defendants negligently collided with one owned by the plaintiff, thereby injuring the plaintiff in person and property. The complaint assumed the form of two counts, but the averments of negligence were the same in each. The first count sought damages for injury to property (automobile); the second, for injury to person.

The defendants are Loren Dunigan, operator of the car which the complaint terms the defendants', Arlie Skiller, owner of the car, and Mrs. Arlie Skiller, an occupant of the car at the time of the mishap.

The judgment in favor of the defendant, Mrs. Skiller, as to both causes of action, is based upon an order of involuntary nonsuit which was entered at the close of plaintiff's case. The judgment in favor of the

defendants, Arlie Skiller and Loran Dunigan, as to the first cause of action, is based upon orders of involuntary nonsuit which were entered at the close of of plaintiff's case. The judgment in favor of those two defendants, as to the second cause of action, is based upon the verdict of a jury.

The collision occurred December 14, 1945, at about 7:15 a. m., two miles northeast of Salem upon the Salem-Silverton highway. At the time of the impact, the car, of which the plaintiff claims ownership, was standing still and was facing southwest, that is, toward Salem. It was struck in the rear by the car driven by defendant Dunigan, who was also proceeding toward Salem.

The parties agree that at the hour of the impact the air was foggy and so cold that frost formed upon windshields. The sun rose that morning at 7:21. Due to the fact that his windshield had become frosty, the plaintiff stopped his car at the place we mentioned and was engaged in removing frost when the defendants' car approaching from the rear collied with it. The pavement is 21 feet wide and upon its two sides are gravel shoulders five or six feet wide.

The plaintiff presents four assignments of error. The first challenges three rulings which may be summarized as follows: (a) the first ruling sustained the defendants' objection to the receipt of evidence of a title certificate which described the automobile of which the plaintiff claims ownership; (b) the second sustained the defendants' objection to the receipt in evidence of a paper which the plaintiff terms "a vehicle registration slip"; and (c) the third sustained the defendants' motion for an involuntary nonsuit upon the first cause of action.

The second assignment of error is based upon rulings which sustained objections made by the defendants to the following questions which plaintiff's counsel propounded to witness L. H. Meyer:

"Q. About how fast in miles per hour would you say that the Ford convertible coupe was going?"

"Q. When this car passed you, did you make any comment to your daughter?"

We explain that "the Ford convertible coupe" mentioned in the first question and "this car [that] passed you," mentioned in the second, were one and the same car. The plaintiff claims that that car was the one which Dunigan was driving, and that Mr. Meyer saw it about five miles before it struck the one from which the plaintiff was removing frost.

The third assignment of error is based upon a contention that error was committed when the trial judge, after both parties had rested, refused to vacate the previous order of involuntary nonsuit favorable to the defendant, Mrs. Arlie Skiller, which he had entered at the close of the plaintiff's case.

The fourth assignment of error is based upon instructions given by the trial judge to the jury which, as epitomized in the plaintiff's brief, read as follows:

"If you find that plaintiff * * * parked his automobile upon the paved portion of the * * * highway at the time of the collision when it was practicable for the plaintiff to have parked his automobile off the paved portion of the * * * said highways, plaintiff was guilty of negligence as a matter of law, * * *. If you find that plaintiff at the time and place of collision * * * parked his automobile upon the * * * highway without leaving a clear and unobstructed width of not less than sixteen feet on the main portion of * * *

highway opposite the said parked vehicle, plaintiff was negligent as a matter of law * * *."

Plaintiff's exception to the instruction was expressed as follows:

"Plaintiff also exeepts to that part of the Court's instructions and to each place where the Court referred to the parking of an automobile at any time during the period of this controversy for the reason that the evidence and all of the evidence shows that the placing or parking of the automobile was the result of an emergency stop, and that at no time was it parked."

Before considering assignments of error I and III, we shall consider II and IV.

Mr. L. H. Meyer, mentioned in assignment of error II, was a passenger in an automobile which his daughter was driving toward Salem. The Meyer car was proceeding in the same direction as the defendants'. According to Mr. Meyer, "approximately five miles back" from the place where the plaintiff's car was struck by the defendants', the Meyer car was overtaken by a Ford convertible coupe. He swore that he saw no other Ford convertible coupe upon the road. The car owned by defendant Arlie Skiller was a Ford convertible coupe and, based upon the facts we have mentioned, the plaintiff contends that the car which passed the Meyer car must have been the one which struck the one of which he (plaintiff) claims ownership. It will be recalled that one of the questions which plaintiff's counsel submitted to Mr. Meyer inquired for the rate of speed of the passing vehicle and that the other one asked whether the witness made "any comment" to his daughter when the passing occurred. Notwithstanding the fact that the defendants' counsel made an objection to the second question,

as he had also to the first one, the witness, before the ruling was made, replied, "I did." After that answer, the objection was sustained and plaintiff's counsel proceeded no further with this line of inquiry. Thus, the second question was fully answered, but in view of the manner in which counsel presented the case, we will assume that plaintiff's counsel went on and asked the witness to repeat the "comment."

■ No offer of proof was made after the objections to the first question was sustained, and likewise none was made after the objections were sustained to the question which asked the witness to repeat the comment. The plaintiff failed to indicate in any way the answers which the witness would have made had he been permitted to answer the questions. The latter do not suggest the information which plaintiff's counsel presumably expected to receive from this witness.

Section 1-1011, O. C. L. A., says:

"The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party."

Section 5-704, pertaining to the contents of a bill of exceptions, provides:

" * * * And no exception need be taken to any ruling upon an objection to the admission of evidence, * * * but the question put or other offer of evidence, together with the objection thereto and the ruling thereon, shall be entered by the court, judge, referee or commissioner, or by the stenographer, * * *."

Rule 7 of the Model Code of Evidence written by the American Law Institute says:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be

reversed, by reason of the erroneous exclusion of evidence unless

  (a) it appears of record that the proponent of the evidence either made known to the judge and the adversary the substance of the evidence in a form and by a method approved by the judge, or indicated the substance of the expected evidence by questions permissible under Rule 105 (g), and

  (b) the court which passes upon the effect of the error or errors is of opinion that the excluded evidence would probably have had a substantial influence in bringing about a different verdict or finding.''

In the brief which he filed in this court, the plaintiff states the answer which he believes Meyer would have given to the second question had he been permitted to answer. Offers must, however, be made before the trial judge in the presence of opponent. There are two reasons for this requirement: (a) If opposing counsel doubts his adversary's word, resort may be had to the witness himself; and (b) after the trial judge hears the offer of proof, he may change his mind and thus the offer of proof will bear fruit in the trial court.

In the absence of an offer of proof, an appellate court can not say that the challenged ruling affected adversely the substantial rights of the appellant, and generally can not determine whether or not the ruling was, in fact, erroneous. In the present instance, the question which asked for the ''comment'' apparently sought to elicit nothing but hearsay evidence, but, in the absence of an offer made in the presence of defendant's counsel, we can not be certain of the situation which would have developed had an offer been made. Since the plaintiff failed to follow the adverse rulings

with offers of proof, this assignment of error does not disclose merit: *Bach v. Chezem,* 168 Or. 535, 124 P. 2d 710; *Riley v. Good,* 142 Or. 155, 18 P. 2d 222; *Burgess v. Charles A. Wing Agency,* 139 Or. 614, 11 P. 2d 811; *Ashmun v. Nichols,* 92 Or. 223, 178 P. 234, 180 P. 510. There is nothing novel about the principle which those decisions employed. It conforms with the practice generally followed by other courts: 4 C. J. S., Appeal and Error, § 291(b), at p. 580.

■■ The fourth assignment of error challenges the instructions which we have already set forth in part.

The entire instruction follows:

"If you find that the plaintiff, and that is Mr. O'Brien, parked his automobile upon the paved portion of the Salem-Silverton Highway at the time of the collision here in controversy when it was practicable for plaintiff to have parked his automobile off the paved portion of the said highway, plaintiff was guilty of negligence as a matter of law, and if that negligence proximately caused or contributed in any degree, no matter how slight, to plaintiff's injury and damage, plaintiff cannot recover and your verdict must be for the defendants.

"If you find that plaintiff at the time and place of the collision here in question parked his automobile upon the Salem-Silverton Highway without leaving a clear and unobstructed width of not less than sixteen feet on the main portion of said highway opposite the said parked vehicle, plaintiff was negligent as a matter of law, and if that negligence proximately contributed to plaintiff's injuries and damage in any degree plaintiff cannot recover, and your verdict must be for the defendants.

"If you find that plaintiff parked his automobile on the Salem-Silverton Highway at the time here in question in such manner or place that a clear view of said automobile could not be obtained

from a distance of two hundred feet in each direction therefrom, plaintiff was guilty of negligence as a matter of law, and if that negligence proximately caused or contributed in any degree, no matter how slight, to plaintiff's injuries or damage, then he cannot recover and your verdict must be for the defendants."

Section 115-353, O. C. L. A., says:

"(a) No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off the paved or improved or main traveled portion of such highway; provided, in no event, shall any person park or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear and unobstructed width of not less than 16 feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of 200 feet in each direction upon such hghway.

"(b) * * *

"(c) The provisions of this section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position, nor to emergency cars or vehicles of the police, traffic or sheriff's office, or the fire department or ambulances where such vehicles at the time are actually used in an emergency which necessitates a violation of the provisions hereof."

Recently § 115-353, subds. (a) and (c) received analysis in *Morris v. Fitzwater,* 187 Or. 191, 210 P. 2d

104, which cites some earlier considerations given to this section of our laws.

The plaintiff contends that he did not park his automobile within the purview of § 115-353, subd. (a), but that frost upon his windshield disabled his car and rendered it impossible for him to go on. He depends upon subdivision (c) of § 115-353, although he requested no instruction upon that subdivision of our laws. We quoted in a preceding paragraph his sole exception.

We now turn to the evidence. The plaintiff, after describing the manner in which he was driving toward Salem and approaching the spot where the collision shortly occurred, was asked by counsel to state what then happened. The following is the testimony that then was given:

"Q. Mr. O'Brien, when the ice began to accumulate on your windshield, did you stop?
"A. I did.

"Q. Did you make any investigation to determine where you were stopping?
"A. I did.

"Q. When you stopped, what did you do?
"A. I got out of the car.

"Q. After you got out of the car, did you check to see where you had stopped?
"A. I did.

"Q. Where had you stopped?
"A. I had stopped on the off shoulder of the road.

"Q. Which wheels of your car would be nearest toward the traveled portion of the road?
"A. My left wheels.

"Q. On which side of your car did you get out?
"A. The left side.

"Q. When you got out of the car, did you stand by the side of the car for the purpose of scraping off the ice?

"A. I did.

"Q. Were you on the pavement, or just off it?

"A. I was not.

"Q. Your answer would be that you were off the pavement at the point where you stood?

"A. Yes.

"Q. Was your car entirely off the pavement?

"A. Absolutely.

*  *  *

"Q. Where did you stop your automobile, with reference to the center of the Salem-Silverton Highway?

"A. With reference to the center of the highway?

"Q. Yes.

"A. From the yellow line?

"Q. Yes.

"A. On the shoulder, on the right on the north side of the highway.

"Q. How many wheels did you have on the pavement?

"A. None.

"Q. You are telling us you had all four wheels off the pavement?

"A. I am telling you just that.

"Q. You say you stepped out of the car and were standing on the ground?

"A. I stood on the ground.

"Q. And you were also standing off the pavement?

"A. I was standing outside of the car. If you will check that, you will find I was outside of the car.

"Q. I understood you to say you were also on the shoulder.

"A. That is right.

"Q. You were not standing on the pavement?

"A. I was not standing on the pavement."

The plaintiff added that he spent "approximately two or three minutes" cleaning his windshield before the collision occurred. By reverting to § 115-353, O. C. L. A., it will be seen that it has application to two kinds of stopping that occur upon public highways outside of business and residential districts. The first type occurs "when it is practicable to park or leave such vehicle standing off the paved or improved or main traveled portion." That type is unlawful. The other kind occurs when a vehicle becomes "disabled * * * to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position." That type is permissible. Obviously, the difference in treatment does not hinge upon the synonym which one may employ for the word "stop"; the section itself uses the words "park" and "leave standing" as equal in connotation. The difference between the situations expressed in subdivisions (a) and (c) is this: In subdivision (a) it is practicable for the car to move on and get off the "improved or main traveled portion," while in subdivision (c) the car has become disabled and can go no further.

Evidently the car driven by the plaintiff was not disabled to such extent that it was impossible for it to get off the main traveled part of the highway, for the plaintiff, as we have seen by quotation from his testimony, swore that before he stopped he drove his care completely off the main traveled portion of the highway. According to him, he did not stop until his car was so far upon the berm of the roadway that there was space between the edge of the pavement and the left-hand side of his car for him to occupy while he removed the frost from his windshield. Therefore, if his testimony reflects the truth, subdivision (a) of § 115-353 has no application to his case.

The defendants presented evidence showing that plaintiff's car, while its windshield was being cleaned, was not upon the berm of the roadway but within two feet of the center line of the pavement. Very likely it was that evidence which induced the trial judge to give the challenged instruction. Webster's New International Dictionary, 2d Ed., defines the verb "park" as follows: "To stop and keep (a vehicle, esp. a motor vehicle) standing for a time on a public way or to leave temporarily on a public way or in any open space, * * *."

Since the plaintiff was precluded by his own testimony from claiming that it was "impossible to avoid stopping and temporarily leaving" his car upon the pavement, it was his duty to have driven it off the "paved or improved or main traveled portion" of the thoroughfare (as he swore he did) if it occupied the position attributed to it by the defendants' evidence. In swearing that he drove his car far upon the berm, he estopped himself from claiming that it was disabled. These being the circumstances, the Instructions' selection of the word "parked" in lieu of some other term could not have been prejudicial. We dismiss this assignment of error as lacking in merit.

■ Assignment of error I is two-fold in character. Its first phase is based upon (1) ruling which held inadmissible two documents upon which the plaintiff relied to prove his ownership of the car which the denedants' struck, and (2) the involuntary nonsuit which was entered upon the first cause of action. The specification of negligence in counts 1 and 2 were precisely the same. The jury found in favor of defendants Loren Dunigan and Arlie Skiller upon the second cause of action. The answer conceded that the plaintiff sustained injuries to his person when the

collision occurred. We think the conclusion is inescapable that even if the challenged evidence had been received and the order of involuntary nonsuit upon the first cause of action had not been made, the verdict of the jury upon that cause of action would have been the same as the one it returned upon the second. Each was based upon the same charge of negligence. Manifestly, the jury found that the defendants' car was driven with due care. We find no merit in this assignment of error.

■ We come now to the third assignment of error. which is grounded upon a contention that the trial court, after both parties had rested, should have vacated the order of involuntary nonsuit which it entered in favor of defendant Mrs. Arlie Skiller upon her motion after the plaintiff had rested. The order was based upon the fact that the plaintiff had presented no evidence showing that Mrs. Skiller was personally negligent and none that defendant Dunigan's negligence, if any, was chargeable to her. The plaintiff makes no contention that under the state of the record as it appeared when the ruling was made, error was committed. However, Mrs. Skiller became a witness for the two remaining defendants and gave some testimony which, the plaintiff claims, showed that the Skiller car was being operated for her by Dunigan.

After (1) the parties had rested, (2) counsel had made their final arguments to the jury, (3) the presiding judge had given the jury some preliminary instructions which informed them that, through action which he had taken, Mrs. Skiller was no longer a party and the cause of action for recovery of damages for injury to plaintiff's car had been withdrawn, and (4) a recess had been taken to the following day for

the purpose of instructing the jury upon the remaining issues, plaintiff's counsel moved for "an order rescinding the order sustaining defendants' motion and granting an involuntary nonsuit in the proceedings against Mrs. Arlie Skiller." Going on, he added: "The motion is based on the fact that Mrs. Arlie Skiller testified in open court that Loren Dunigan was driving the car with her permission and for her at the time of the accident." That was the entire motion and explanation. Nothing more was said. Neither a claim nor a showing was made that the plaintiff did not know, before he rested his case, the facts which Mrs. Skiller, as a witness for the two remaining defendants, had narrated.

■ A litigant is never permitted to speculate with a part of his evidence, and, upon meeting with an adverse ruling, ask for another bite at the cherry. Moreover, the jury found that the charges of negligence which the plaintiff made against the person (the driver) whose alleged negligence the plaintiff wishes to attribute to Mrs. Skiller, were without foundation. In making these observations, we do not imply that the testimony which Mrs. Skiller gave for her erstwhile co-defendants could have afforded a basis for a recovery against her. We find no merit in this assignment of error.

The above is a disposition of all assignments of error.

The judgment of the Circuit Court is affirmed.